MOORE, J.
hThe defendant, Demetrick D. Johnson, pled guilty to one count of domestic abuse battery (burning), a violation of La. R.S. 14:35.3(B)(1) and (5), by burning his domestic partner, Remona Smith Edwards, with a hot iron on her right arm during a violent domestic argument. At sentencing; the district court applied Subsection M of the statute, a special penalty provision triggered when the domestic abuse battery is committed “by, burning that causes serious bodily injury” as defined by. Paragraphs B(l) and B(S)[1] in the statute..The court,sentenced the defendant to 40 years at hard labor without benefit of probation, parole, or suspension of sentence. Johnson now appeals his conviction and sentence, alleging in four assignments of error that the sentence is unlawful, excessive, and his guilty plea was infirm. For the following *508 reasons, we affirm the conviction and sentence.
FACTS
On February 14, 2015, the Franklin Parish Sheriffs Office received an anonymous emergency call reporting that a black male was beating a black female inside a black Jeep Cherokee at the ATM located at the Winnsboro Bank in Gilbert, Louisiana. Deputies Joshua Dunn and Shawn Butler were dispatched to the scene. Deputy Dunn testified at the preliminary examination that they drove to the reported location and stopped a black Jeep Cherokee on La. Highway 15. He testified that the defendant was the front seat passenger, and the victim, Remona Smith Edwards, was the driver of the vehicle. The officers separated the two and interviewed |%each person individually. Deputy Dunn said that Ms. Edwards had cuts and bruises on her face, including a bruised and swollen eye.
One of the deputies asked Ms. Edwards if Johnson had hit her. Edwards said she was afraid to say because Johnson said he would kill her if she told the deputies that he hit her, but she eventually admitted to the deputy that Johnson had physically assaulted her that day, hitting her in the face several times and punching her in the back and left hip. Johnson admitted that he punched Edwards. Both were taken to the sheriffs office.
Deputy Dunn described the injuries on Ms. Edwards as “scratches on her face and her left eye was bruised and swollen.” She also had “red marks on her bottom lip.” While at the sheriffs office, Deputy Dunn also noticed a burn about which he said, “it was-it looked bad.” * * * “It was -it was puffy red, swollen.” When asked at the preliminary hearing if the burn was in the shape of an iron, Deputy Dunn said, “It did have-yes. Yes.”
According to the presentence investigation (“PSI”), Ms. Edwards told the deputy that, several days earlier, Johnson came home from work and raised his fists at her while she was ironing. She pushed him, and he grabbed her right arm and held the hot iron to her forearm. Afterward, Johnson barred Edwards from leaving the house by threatening her, telling her that she knew what would happen if she tried to leave. Edwards told the officers that she did not leave because she felt like Johnson would hurt her. After hearing Edwards’ allegations and observing the visible signs of abuse, the deputies arrested Johnson on charges of aggravated second degree battery and false imprisonment. At the time of the arrest, Johnson was on parole from a prior conviction.
laThe sheriffs office made photographs of the several injuries suffered by Ms. Edwards, including her burned arm and the injuries to her face and left hip. These photos are not part of the record on appeal.[2]
On February 20, 2015, Johnson was charged by a bill of information citing “La. R.S. 14:35.3E” as count one, “Domestic Abuse Battery by Burning by committing a battery upon Remona Smith Edwards, a member of his household, by burning her with an non on her right arm on or about *509 February 11, 2015.” Count two of the bill charged one count of simple robbery on February 14, 2015, in violation of La. R.S. 14:65 “by taking cash belonging to * * * Edwards by use of force or intimidation.”
On the same day, Johnson was charged by a separate bill of information with one count of domestic abuse battery on February 14, 2015, in violation of La. R.S. 14:35.3, and one count of false imprisonment in violation of La. R.S. 14:46.
On June 10, 2015, defense attorney Amanda Wilkins, the second of four defense attorneys[3] who were appointed to represent the defendant in the proceedings up to the time of his guilty plea, argued a motion to subpoena the medical records of the victim, Ms. Edwards, and, because she was newly appointed counsel, she moved for a continuance to prepare for trial. It ⅛ important,! to note that the defendant, who was highly engaged in the various hearings, was present at this hearing. Ms. Wilkins explained that the medical evidence was important because a battery-by-burning conviction could expose her client to a sentencing range of 5 to 50 years if the state proved the element of a “substantial injury” to the victim. Hence, she argued that the victim’s medical records might prove to be exculpatory regarding that element. The state responded that they have photos that showed the extent of the injuries to the victim. The hearing was continued to August 26, 2015, in order to include Ms. Edwards in the hearing since it concerned her medical records. Again, the defendant was present in open court with his defense counsel. Ms. Wilkins stated the following in her opening remarks:
This is a case involving domestic abuse battery by burning which carries a five to fifty year penalty and one of the elements of that serious charge. And then one of the elements of that is that there is a substantial or serious injury caused by the burning. And so that is one of the reasons why we’ve requested Ms. Edward’s medical records is just about the nature of the injury.
Ultimately the matter was resolved when Ms. Edwards agreed to authorize the release of her medical records to the defense, and the motion was granted. The record contains no medical records; apparently there were never any medical records regarding this incident.
The case came up for trial on June 6, 2016. After the jury was selected, Johnson decided to enter into a written plea agreement with the state. A handwritten entry in the preprinted “standard form” agreement specified that Johnson agreed to plead guilty to “DAB by burning.” There is no citation of the statute of conviction or citation of Subsection M. In exchange for the guilty plea, the state agreed to dismiss all other charges, Rwaive the right to charge as a habitual offender, allow the sentence to run concurrently with any other sentence, and to allow Johnson credit for time served since February 14, 2015, the date of his arrest. The agreement also provided that the court would order a PSI and “sentence within statutory range.” Neither the statute nor the special penalty provision was cited to the trial court.

The Guilty Plea Hearing

The defendant entered his guilty plea on June 6, 2016. The following factual basis for the plea was made in court by the assistant district attorney:'
*510 And as a factual basis for this complaint was a call that was made by an anonymous caller to the Franklin Parish Sheriffs Office who in turned [sic] dispatched units regarding a fight that was happening inside of a vehicle at the Gilbert branch, of the Winnsboro State Bank. The caller personally witnessed Mr. Johnson striking the victim, Ms. Edwards. And they had gotten some money out of the ATM machine. Officers responded. They pulled the vehicle over. They did notice that Ms. Edwards was in a bad way. Had visible injury to her face. And when they got back to the sheriffs office, she did show them where an iron had burned her. Photographs were taken. They’re provided to defense counsel. We’re going to submit those photographs in the course of the trial. The burn is in the actual shape of an iron. You can tell it is an iron. And that is consistent with her statement that, that happened during a fight at her home with Mr. Johnson on or about February 11, 2015. Said there was an argument that escalated and he had taken her arm and pushed the iron intentionally against her arm knowing that it was hot. So that is the factual basis for the plea. They were living together at the time. Mr. Johnson was living there at the home of Ms. Edwards. And that is the extent of our case and that’s what we would offer to prove to the jury. That’s our factual basis.
Following this statement, the court had the defendant sworn in and asked him some questions before determining that he was competent to enter a guilty plea and to freely waive his constitutional rights. Then the following exchange took place:
| flCourt: Have you had the opportunity to talk to your attorney, Mr. Young, about your case and any defenses that you might have?
Defendant: Yes, Ma’am. We spoke.
Court: Did Mr. Young explain the charge and the maximum and minimum sentence you could receive if you did not accept this plea agreement?
Defendant: Excúseme?
Court: Did he explain to you the charge and the maximum and minimum sentence that you could receive if you did not accept this plea agreement? •
Defendant: Yes, ma’am.
Court: Do you need any additional time with him?
Defendant: Uh. ...
Defense Counsel: I think we’re good.
Defendant: I think we got a clear understanding.
The defendant acknowledged that he understood the charge as recited in the bill of information stating that he committed a battery on Remona Smith Edwards, a member of his household, by burning her with an iron on her right arm.
After reading the statute defining the general offense of domestic abuse battery[4] and reading the definition of a household member, the court told the defendant that it needed to state the sentencing range. The judge stated the following:
It says, that if domestic abuse battery is committed by burning, that results in serious bodily injury, the offense shall be classified as a crime of violence and the offender shall be imprisoned at hard labor for not less than five nor more than fifty years without benefit of probation, parole, or suspension of sentence. So, that is the statutory definition and the sentence 17that you were exposed to. I also want to explain that serious bodily *511 injury means bodily injury- that involves extreme physical pain, or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, of a substantial risk of death. Also would involved [sic] unconsciousness as one part of that. I’m also going to explain to you about a second, third, or fourth conviction of domestic abuse battery since I think that, that would be what you would be exposed -to if you ever are arrested on another domestic abuse battery. Let me get that.
The defendant interrupted the judge at this point, stating:
Defendant: Excuse me, Ms. McIntyre? Where I can explained uh, my in details about the story before you decide your verdict.
Court: There will be an opportunity for you to explain to me in writing; And you can have members of your family write to me on your behalf as well as Mr. Young will advise you of certain things that will be helpful to submit to me.
The court then read .the less severe penalty provisions for second offense simple domestic abuse battery,.for third offense (the charge erroneously cited in the bill), and for fourth offense, which the court said she thought were “relevant to.the proceedings here today.” Then the court addressed the defendant,
Court: “So, do you understand, the charge and the maximum and minimum penalty that could, be imposed upon you?”
Defendant: Yes, ma’am.»
Following this exchange, the' court told the defendant that by pleading guilty, he was giving up certain rights, including the rights • not to plead guilty ■ and have a speedy and public trial by jury, to have the assistance of a lawyer that would be appointed if he could not afford one, that the state had the burden to prove his guilt beyond a reasonable doubt at trial, the right to confront his accusers, the right to testify at his trial, the privilege against self-incrimination, and the right to appeal his conviction if found guilty at 1 «trial. The court explained that he would be forfeiting these rights by pleading guilty.
The court asked the defendant if anyone, including his attorney or the district attorney or sheriffs office, made any threats or promises in order to persuade him to enter the guilty plea as stated in the agreement. The court found that the guilty plea was freely and voluntarily given with an understanding of the nature of the charge as well as the consequences of the plea, including an understanding of the plea agreement. The defendant acknowledged that the signature on the plea agreement was his signature. The court ordered a PSI and set the date for sentencing the following month on August 3, 2016.
' Prior to imposing sentence, the court reviewed the PSI, went over the facts of the case, read from the victim impact statement, and read letters from the persons familiar with the defendant, the defendant’s family, and the victim’s family. It noted that the victim had .reported that she could not sleep at night from what the defendant had done to her, and recounted many of the cruelties the defendant inflicted on her. The victim expressed her fear of him and her fear that when he is released, he-will kill her and her family. The victim’s father, Mack Smith, expressed similar views of the defendant. Both asked that the defendant be given the maximum sentence. .
The court reviewed statements made to the investigating officer by Franklin Parish Sheriff Kevin Cobb that the defendant *512 had exhibited a propensity for violence in his extensive criminal history. He recommended a maximum sentence. Likewise, the Chief of the Winnsboro Police Department, George Wilhite, recommended a maximum sentence for the same reasons.
laBy contrast, the defendant’s relatives asked for leniency in sentencing.- The investigating officer also spoke with the defendant’s grandmother, Lucy Johnson, and his mother, Sandra Johnson. Both hoped that he would not receive a lengthy sentence and get another chance at rehabilitation.
The court reviewed details of the defendant’s extensive criminal record that included several crimes against the person, including a charge of attempted second degree murder and aggravated assault. The attempted murder charge was mile prossed and the defendant pled guilty to aggravated assault. He was also arrested for simple battery that occurred during a domestic disturbance. He was later arrested for trespassing, battery on a police officer, and resisting by flight. Other arrests included armed robbery (for which he pled guilty to simple robbery), another aggravated battery charge, aggravated battery with a dangerous weapon, cocaine distribution, and parole violations.
The court considered in great detail the 39-year-old defendant’s social history, mitigating and aggravating factors, and once again read the 5-to-50 year sentencing range for the offense to which the defendant pled guilty. The court asked the defendant if he had anything he wished to say before sentencing. The defendant indicated that he did.
After being sworn in, the defendant launched into a protracted statement regarding the circumstances of his guilty plea agreement and guilty plea, the gist of which was that he pled guilty to the offense only on the advice of his counsel, but was wrong to trust his counsel. He said he was “pleading blind” and trusted his counsel’s advice that if he went to trial and was found guilty, the district attorney would file a habitual offender bill. He maintained that the story of his offense was fabricated by Ms. Edwards, and |inhe asked the court to give him a lesser sentence “like what me and my lawyer ‘conversated’ about why I took this plea agreement deal.” He went on to argue that the district attorney enhanced the charges on him, but there was actually no proof of the offense and the victim never went to a physician for treatment of the burn.
Defendant: Okay. Uh, first of all, I stated, Your Honor, uh, I said before I commencing to my PSI, Your Honor, I would like to explain why I pleaded in the blind, in a situation like NORTH CAROLINA VERSUS “AFFRA” (ALFORD). But the only thing that I would like to explain in detail is how I trusted my represented paralegal lawyer words, when we spoke six, six, sixteen (June 6, 2016), at my trial date, “Jury pick hearing.” I say therefore, I feel as I made an intelligent plea by pleading in the blind due to the stuff that I would have faced if a innocent person like me convicted of the charge. And what I mean by that, Your Honor, because after-after me just, you know, it was-it was-a big argument about, you know, while I was preparing for my trial date, I was steady, was trying to get motions filed. And it was like a continual—I was trying to get a continuation because I wasn’t prepared for my trial date. I really wanted to go to trial. So, I made this plea in the blind because due to what my attorney, Mr. Young, promised me. And he happened to tell me—shall I mention this to the Judge?
Mr. Young: You can say whatever you want.
*513 Mr. Barham: I can just barely hear him. Could you speak up just a little, Mr.. Johnson?
Defendant: I was asking my paralegal lawyer shall I mention this to you—to the Judge, Mrs. Ann B. McIntyre. Well, my lawyer told me that he spoke with you and everything. Y’all came to this agreement blasé—blasé -and there, what he explained to me. So, I was willing to take the plea in the blind. Even though I know it was wrong for me what I did because it was wrong. I feel like I was very ignorant for pleading to this charge due to they ain’t had the proper evidence on me after Will “Bur-ham” (Barham) uh, felt like, you know, a proper reason to have me over these charges upgraded on me. I mean, I don’t know why but they was just upgraded on me. I thought I was just locked up for a misdemeanor, domestic violence. So, once I was incarcerated, Your Hon- or, and all these charges piled up on me in the blind. And this charge of—
InThe Court: Mr. Johnson, let me remind you that you pled guilty and we’re here on the sentencing. It sounds like you are appealing.
Defendant: I mean, that was—
The Court: Is there any other information that I need in order to make my sentence of you? That’s what I’m here for today. And that’s what you are here for today.
Defendant: I mean, yes. That was part of the agreement. See I—that was, I pleaded in the blind like I was—like I told you I pled in the blind. But I trusted my lawyer word. And that’s all account that I supposed to been trust my represented lawyer word as a client.
And what we discuss was in confidential. But when we brought it to—
The court interrupted and asked the defendant if he wanted to make any point regarding sentencing. The defendant said that if “the sentence is not right,” he wanted his lawyer to file a motion “withdrawing my sentencing due to * * * ” He went on to argue that even though he pled guilty to the charge, there was a lack of evidence against him. He went on to explain why he felt he was “bamboozled” by his attorney into pleading guilty.
The defendant was informed that he would have the right to appeal, and listened to the arguments from defense counsel and the state before proceeding to sentencing. During this time, the defendant continued to raise arguments.
The court considered the aggravating and mitigating factors, and specifically found there was ah undue risk that Johnson would commit another crime if he received a suspended sentence, noting his prior record and parole violations; that he was in need of correctional treatment by a custodial environment; that he needed substance abuse treatment; that the L ¿instant crime was a crime of violence, and his conduct manifested intentional cruelty to the victim. The court stated:
You intentionally pressed a hot iron against the skin of the victim leaving a significant burn imprint on her body. As well as hitting her multiple times and leaving bruises on different parts of her body. The victim states that she will have a scar on her arm from the burn for the rest of her life which will forever remind her of the torture you put her through.
The court also noted that the defendant had made death threats to her and her family if she ever left him, constantly harassed her with phone calls, humiliated her with inspections of her genitals with accusations of infidelity; the court found he used a dangerous weapon to commit the crime, and that the victim and her family *514 feared for their lives. The court found that he should receive a maximum sentence and he had received a favorable plea bargain.
The court found some mitigating factors, namely, that his family felt he needed help arid treatment and a lesser sentence and that he had a six-year-old daughter.
After these considerations, the court imposed a sentence of 40 years at hard labor, without the benefit of parole, probation, or suspension of sentence. The court gave him credit for time previously served. It informed him that he had the- right to appeal from the sentence, and informed him of the appropriate time limitations for appealing and for post conviction relief. Thereafter, the defense filed a motion to reconsider sentence, which was dénied. This appeal followed,
DISCUSSION
By his first assignment of error, the defendant alleges that the district court erred by sentencing him to a sentence which did not rest upon a valid |iaand sufficient statute, a valid and sufficient indictment, and a valid and sufficient plea of guilty.
Although the bill of information stated that the offense being charged was domestic abuse battery by burning, the bill incorrectly cited the offense as a violation of La. R.S. 14:35.3(E) instead of citing La. R.S. 14:35,3(B)(1)and (5) or 14:35.3(M).[5] Subsection “E” of the statute is a penalty provision for “third offense domestic abuse battery” and provides a sentencing range of one to five years with or without hard labor. The bill of information was never amended to state the correct citation, and according to- appellate counsel, the defendant never had' the benefit of an explanation of the error and irtiplies that he did not know he was pleading guilty to the much more severely punishable offense. The court sentenced the defendant according to Subsection “M,” a penalty provision that applies “if the domestic abuse battery is committed by burning that results in serious bodily injury”; the offense is then classified as a crime of violence, and “the offender shall be imprisoned at hard labor for not less than- five nor more than fifty years without benefit of probation, parole, or suspension of sentence.” La. R.S. 14:35.3(M).
Johnson contends that riot only was the bill’s citation incorrect 'by referencing La. R.S. 14:35.8(E) instead of La. R.S. 14:34.3(M), but the written description of the crime omitted an essential element of the violation that triggers Subsection “M,” namely that the domestic abuse battery j14resulted in “senous bodily injury.” By excluding this element, Johnson argues that the charge did not clearly fall under La. R.S. 14:35.3(M). The instant' battery, he maintains, could have fallen under another subsection of the domestic abuse battery law.
Johnson admits that the judge read the sentencing range provided in La. R.S. 14:35.3(M) during the guilty plea colloquy, but contends the judge ambiguously read other sentencing possibilities, such that, he argues, he did not realize that he would be sentenced under Subsection M." As a result, he maintains, the judge was not clear that by pleading guilty to the domestic abuse battery charge, he was subject to a sentencing range of 5 to 50 years at hard labor, without the benefit of probation, pa *515 role, or suspended sentence provided in La. R.S, 14:35.3(M). Johnson also claims that he is entitled to rely on the sentencing range for the charge identified in the bill, La. R.S. 14:35.3 (E).
Johnson maintains the sentence is invalid pursuant to La. C. Cr. P. art. 872 (“A valid sentence must rest upon a valid and sufficient (1) statute; (2) Indictment; and (3) verdict, judgment or plea of guilty”), because the bill of information did not comply with La. C. Cr. P. art. 464,[6] and, therefore, he was not provided sufficient notice of the violation of law for which he was charged. In support of his argument, he cites State v. Ainsworth, 528 So.2d 599 (La. App. 2 Cir. 1988), where this court found an indictment fatally I ^defective for failing to set forth the aggregate amount of a theft/unauthorized use charges making it impossible to determine the grade of the offense.
The state contends that the bill of information sufficiently complied with La. C. Cr. P. art. 464 and was not otherwise invalid or insufficient, but merely contained an insignificant typographical error in the citation. The state points out that La. C. Cr. P. arts. 464 and 487 contemplate that. errors of form will sometimes be made in indictments. The state argues that the error in this case, referring to La. R.S. 14:35.3(E) instead of La. R.S. 14:35.3(M), was one of form and did not mislead Johnson to his prejudice as the circumstances leading up to his guilty pléa fairly apprised him of the charges to which he was pleading guilty. '
The state also cites State v. Ainsworth, supra, as standing for the proposition that minor and technical deficiencies in the -indictment for which there were no objections prior to trial are not grounds for reversal “[wjhere in fact an accused has been fairly informed of the charge against him by the indictment and has not been prejudiced by surprise or lack of notice.” In that regard, the state argues that, unlike State v. Ainsworth, supra, the plain language of the bill of information in this case correctly discussed the nature of the charge against Johnson as domestic abuse battery by burning. The fact that the bill of information omitted the term “serious bodily injury” was insignificant especially since the trial court identified the element during the guilty plea colloquy.
Furthermore, the state argues that all bther aspects of the prosecution, including the discovery and the charges as explained by the state and the trial court, clearly identified the crime as domestic abuse battery by burning, an unmistakable violation of 14:35.3(M). The court should look at the I ^circumstances of the particular case to determine whether a defendant understood the’true charges against him, despite an error in the bill of information. See State v. Olivia, 13-0496 (La. App. 4 Cir. 3/26/14), 137 So.3d 752, writ denied, 14-0884 (La. 11/14/14), 152 So.3d 879 (court held that omission of the actual statute number did not’ mislead or prejudice the defendant, especially where the ’bill of information stated the charges in writing and the record as a whole demonstrated the defendant’s understanding of the true charges); State v. Skinner, 15-0510 (La. App. 4 Cir. 4/27/16), 191 So.3d 676 (court rejected defendant’s 'argument that the *516 amended bill was invalid because it failed to include the statute number of the violation).
A valid sentence must rest upon a valid and sufficient: (1) Statute; (2) Indictment; and (3) Verdict, judgment, or plea of guilty. La. C. Cr. P. art. 872; State v. Mead, 14-1051 (La. App. 4 Cir. 4/22/15), 165 So.3d 1044. The time for testing the sufficiency of an indictment is before trial by way of a motion to quash. La. C. Cr. P. art. 535; State v. Green, 41,977 (La. App. 2 Cir. 5/16/07), 957 So.2d 891. A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. State v. Green, supra.
An indictment is not invalid or insufficient merely for containing errors to form. La. C. Cr. P. art. 487(A). Furthermore, “[ejrror in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.” La. C. Cr. P. art. 464. Even if the error in an indictment is one of substance, a district court has the authority to accept a |17guilty plea to a crime with which the defendant is not charged, without the necessity of an amended bill, if the plea is intelligently and voluntarily made and is acceptable to the prosecution. La. C. Cr. P. art. 487(B); State v. Williams, 50,852 (La. App. 2 Cir. 9/28/16), 207 So.3d 552, 556.
After review, we conclude that the record establishes that the defendant knew the exact offense with which he was being charged when he entered the plea agreement and guilty plea, and he knew the sentencing range of that offense. We begin by noting that the bill of information specifically charges “Domestic Abuse Battery by Burning” and describes the act of burning the victim with an iron on her right arm. The citation, as noted above, incorrectly charges a violation of La. R.S. 14:35.3 under Subsection “E” (third offense domestic abuse battery) instead of “M” (domestic abuse battery by burning that causes serious bodily injury). Although the bill does not allege “serious bodily injury,” which is an element of the offense, the record demonstrates that the defendant was well aware that “serious bodily injury” was an element that was required to trigger the penalty provided in Subsection M.
Our review of the record shows that the defendant was present at two hearings in which one of his attorneys, Amanda Wilkins, argued before the court that because “substantial injury” or “serious bodily injury” was an element of the offense required to be proved in order to impose the enhanced penalty, she wanted to obtain the medical records of any treatment the victim received for the burning injury. Additionally, during the guilty plea hearing and colloquy, the defendant acknowledged that he understood the offense to which he was being charged and the sentencing range of the offense. Finally, although the defendant would claim at sentencing that he was |1Rmisled into pleading guilty, he admitted that he discussed the offense and the sentencing range with his attorney and expressly told the court after being informed of the sentencing range, “I think we got a clear understanding.” Later, at the sentencing hearing, he said that he pled guilty because he feared he would be charged as a habitual offender if he were found guilty at trial, but he knew there was no medical evidence of serious injury to Ms. Edwards because she never obtained any medical treatment.
These facts indicate that the defendant had a clear understanding of the charges and the offense to which he was pleading guilty. For these reasons, we con- *517 elude that the error in the bill of information citing third offense domestic abuse battery is of no moment in this case. The bill described the factual basis of the charge, and the defendant was apprised of the crime for which he was charged and the crime to which he would be entering a guilty plea. The bill of information charged domestic abuse battery by burning and cited correctly the general part of the statute, “14:35.3,” but included the wrong punishment provision, Subsec. E. Defendant would obviously know that he had no prior domestic abuse battery convictions. Ultimately, the defendant pled guilty to and was punished under the correct provision of the statute, Subsection M, because the court concluded that both additional factual elements of burning and serious bodily injury were present to trigger application of Subsection M. While a bill of information that clearly charged the factual basis of each element of the offense punishable under Subsection M would have been preferable, it is clear the defendant understood the charges, the elements of hflthe offense, and the evidence against him.[7] The fact that the defendant now believes that the state did not have strong enough evidence to prove “serious bodily injury” is rendered moot by the defendant’s guilty plea to the offense.
By his second assignment, the defendant alleges that the district court erred by accepting a plea which was not knowingly and intelligently given. The defense maintains that Johnson did not make a clear and intelligent plea to the “serious bodily injury” part or section of the domestic abuse statute. He was not allowed to explain his concerns about this at the guilty plea colloquy when he asked the judge when he could give his version of the facts before she gave a verdict. Adding to the confusion, the court read' the penalty ranges for other degrees of the offense, including the penalty range for the statutory violation incorrectly charged in the bill of information.
Further, the defense argues that the factual basis for the plea stated by the district attorney never mentioned intent or the severity of the injury, that is, it never stated any facts that would establish the serious bodily injury element. Nor did the court ever ask the defendant if he admitted these facts, or if, in fact, he was guilty.
A valid guilty plea must be a free and voluntary choice by the defendant. A guilty plea will not be considered free and voluntary unless, at the very least, the defendant was advised of his constitutional rights against self-incrimination, to a trial by jury, and to confront his accusers. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 2d 274 (1969). An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. Boykin, supra; State v. Kennedy, 42,850 (La. App. 2 Cir. 1/9/2008), 974 So.2d 203.
A plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea, including insufficiency of the evidence. State v. Crosby, 338 So.2d 584 (La. 1976); State v. Stephan, 38,612 (La. App. 2 Cir. 8/18/04), 880 So.2d 201. A validly entered guilty plea, or plea of nolo *518 contendere, waives any right a defendant might have had to question the merits of the state’s case and the factual basis underlying the conviction. State v. Bourgeois, 406 So.2d 550 (La. 1981); State v. Hardy, 39,233 (La. App. 2 Cir. 1/26/05), 892 So.2d 710.
Furthermore, there is no requirement that a guilty plea even be accompanied by the recitation of a factual basis for the crime. State v. Kennedy, supra; State v. Griffin, 633 So.2d 358 (La. App. 1 Cir. 1993), writ denied, 94-0240 (La. 10/14/94), 643 So.2d 157. “[T]he due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea. * * * Louisiana law, unlike [federal law], has no statutory provision requiring accompaniment of a guilty plea by the recitation of a factual basis.” State v. Griffin, supra at 360, quoting State v. Perry, 515 So.2d 654 (La. App. 3 Cir. 1987).
La. C. Cr. P. art. 556.1 provides that prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. The test for the validity of a guilty plea does not |2¶ depend upon whether or not the district court specifically informed the accused of every element of the offense. Rather, the defendant must establish that he lacked awareness of the essential nature of the offense to which he was pleading. Kennedy, supra at 207; State v. Forrest, 04-43 (La. App. 5 Cir. 5/26/04), 876 So.2d 187. Violations of Art. 556.1 that do not rise to the level of Boykin violations are subject to the harmless error analysis. State v. Ford, 02-1394, (La. App. 4 Cir. 4/16/03), 846 So.2d 98, writ denied, 03-1401 (La. 11/26/03), 860 So.2d 1132. The proper inquiry is whether the defendant’s knowledge and comprehension of the full and correct information would have likely affected his or her willingness to .plead guilty. State v. Forrest, supra; State v. Haywood, 00-1584 (La. App. 5 Cir. 3/28/01), 783 So.2d 568.
Where the record establishes that an accused was informed of and waived his right to trial by jury, to confrontation, and against self-incrimination, then the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. State v. Wynne, 40,921 (La. App. 2 Cir. 4/12/06), 926 So.2d 789, 793, citing State v. Bradford, 627 So.2d 781 (La. App. 2 Cir. 1993), writ denied, 94-0006 (La. 4/22/94), 637 So.2d 154.
An express admission of guilt is not a constitutional requisite to the imposition of a criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime. North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed. 2d 162 (1970).
A defendant has no absolute right to withdraw a guilty plea. State v. Hoover, 34,952 (La. App. 2 Cir. 4/05/01), 785 So.2d 184. A trial court, in |a2its discretion, may allow a guilty plea to be withdrawn at any time prior to sentencing. La. C. Cr. P. art. 559(A). After sentence has been imposed, La. C. Cr. P. art. 559 does not apply, although the trial court can still grant a post sentence motion to withdraw a guilty plea.
Our review of the transcript indicates that Johnson believed he was making an Alford plea and knew the attendant risk of being sentenced under Subsection M as a result of that plea. Because Johnson entered into a plea agreement with the state and the district court accepted the *519 plea, the only matter to review is whether the guilty plea colloquy reflects that the plea was made knowingly and voluntarily. There is no evidence in the record that Johnson filed a motion to quash the indictment or filed a motion to withdraw his guilty plea with the district court. Thus, Johnson must show that he was deprived of fair notice of the offense charged. State v. Green, supra. The record reflects that during the guilty plea colloquy, the judge informed Johnson of his Boykin rights and that he voluntarily waived those rights. The record also reflects that the judge asked Johnson questions to ensure'that his plea was free and voluntary, leading the judge to conclude that Johnson’s plea was made freely and voluntarily.
Johnson has not shown that the plea was involuntary or made unknowingly. Although a nonresponsive guilty plea made without an amended bill might raise the concern that the defendant did not understand the nature of the charges against him, in this case, the record and the totality of the circumstances show otherwise. According to the record of the guilty plea colloquy, the trial court explained that Johnson was pleading guilty to the charge of domestic abuse battery by burning; explained the elements of the crime; confirmed that Johnson' .understood the charge; explained the | ^sentencing range for the crime; asked questions to determine if the guilty plea was free and voluntary; and explained Johnson’s Boykin rights and that Johnson was waiving those rights by pleading guilty, all of which Johnson stated that he understood.
Based on these considerations and our review of .the record, we find that the guilty plea was freely and intelligently given.
Accordingly, this assignment is without merit.
In his third assignment of error, the defense argues that the district court erred by sentencing the defendant to an excessive amount of time which was greater than the amount provided by the statute charged, La. R.S. 14:35.3(E), thereby causing the sentence to be illegal. Specifically, defendant is arguing that the court was required to sentence him within the one to five year sentencing range of La. R.S. 14:35.3(E).
We have already found that the incorrect Subsection citation in the bill citing La. R.S. 14:35.3(E) (Third Offense. Domestic Abuse Battery) was an inadvertent citation error that did not render the actual charge in the bill of domestic abuse battery by burning invalid. The defendant pled guilty to the latter offense and was punished within the statutory range of that offense. Accordingly, this assignment is without merit.
In his final assignment- of error, the defendant argues that the district court erred by imposing an excessive sentence. Specifically, Johnson argues that the:40-year sentence is excessive because “[t]he case certainly does not represent the worse [síc ] type of burning.” Johnson moved for reconsideration of the sentence arguing that there was no evidence that the injuries caused by the burning were serious enough to require medical | ^attention, and accordingly, the sentence was disproportionate to the crime and factually unjustified.
The state agrees that the sentence represents the “high end” of the sentencing range for this offense, but argues that it is justifiable in this case given Johnson’s criminal history and the facts underlying the conviction. The state points out that the district court took cognizance of the criteria set forth in La. C. Gr. P. art. 894.1, and articulated a sufficient basis for the sentence in her sentencing comments. The *520 state also contends, given Johnson’s long criminal history and the deliberate cruelty displayed to his victim, that the sentence does not shock the sense of justice.
La. R.S. 14:35.3(M) provides that “the offender shall be imprisoned at hard labor for not less than five nor more than fifty years without benefit of probation, parole, or suspension of sentence.”
In reviewing a sentence for ex-cessiveness, an appellate court uses a two-step process. First, the record must show that the district court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The district court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Washington, 50,337 (La. App. 2 Cir. 1/13/16), 185 So.3d 852, writ denied, 16-0224 (La. 2/3/17), 215 So.3d 688. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); Washington, supra; State v. Ates, 43,327 (La. App. 2 Cir. 8/13/08), 989 So.2d 259, writ denied, 08-2341 (La. 5/15/09), 8 So.3d 581.
Second, this court must determine whether a sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Lewis, 49,138 (La. App. 2 Cir. 6/25/14), 144 So.3d 1174, writ not cons., 16-0235 (La. 3/14/16), 188 So.3d 1070. A sentence can be constitutionally excessive, even when it falls within statutory guidelines if (1) the punishment is so grossly disproportionate to the severity of the crime that, when viewed in the light of the harm done to society, it shocks the sense of justice; or, (2) it serves no purpose other than to needlessly inflict pain and suffering. State v. Lobato, 603 So.2d 739 (La. 1992). See also, State v. Dorthey, supra; State v. Weaver, 01-0467 (La. 1/15/02), 805 So.2d 166.
The trial court has wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La. App. 2 Cir. 12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Jackson, 48,534 (La. App. 2 Cir. 1/15/14), 130 So.3d 993; State v. Free, 46,894 (La. App. 2 Cir. 1/25/12), 86 So.3d 29.
As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 07-2031 (La. 2/15/08), 974 So.2d 665; State v. Hogan, 47,993 (La. App. 2 Cir. 4/10/13), 113 So.3d 1195, writ denied, 13-0977 (La. 11/8/13), 125 So.3d 445.
In this case, Johnson pled guilty pursuant to a plea agreement which provided for a sentence within the statutory range. The record shows that he was aware of the minimum and maximum sentence that could be imposed. During the sentencing hearing, the state asked for the maximum sentence of 50 years. The district court *521 sentenced Johnson to an upper-range sentence of 40 years.
Before sentencing Johnson, the district court considered the facts and circumstances of this offense, Johnson’s criminal history and background as set out in the PSI, the victim impact statement, and character statements from law enforcement and from Johnson’s friends and family. Specifically, the judge reviewed the PSI, and noted the particulars of the domestic abuse charges, the injuries inflicted upon Edwards, and her account of Johnson’s abusive behavior on February. 11 and 14, 2015.
The district court also discussed the victim impact statement in which Edwards asserted that Johnson had a history of obsessive and violent behavior toward her. Edwards explained that Johnson was controlling and would go to extremes to check up on her during the day (calling her 10-15 times a day) and to restrict her interaction with others when she came home (taking her phone away and checking her phone history). Edwards stated that, on a daily basis, Johnson accused her of cheating and that he subjected her to humiliating body inspections to determine if she had been having sex. She said:
I27I was scared to go home but I knew he would hurt me and my child if I left... He told me that he would kill me and my family. The day he got arrested he said he would kill me then. I am very afraid of him. I know he is in jail, but I am so scared that I still to this day catch myself looking around to see if I see him before I go outside. If he gets released, I know he will come back and kill me and my family. I beg the court to give him the maximum sentence for what he did.
Edwards’ father provided a statement stating that the “violence against my daughter has changed her life and our lives forever. He made numerous threats to kill her and he made numerous threats to kill me if she told anybody what happened. I think he would definitely hurt her and her child if he ever got released.” Edwards described Johnson as being in and out of jail, violent, obsessive, jealous and dangerous, and asked for the maximum sentence.
Statements were provided from Johnson’s mother and grandmother, as well as a family friend, seeking leniency for Johnson. His grandmother explained that Johnson had made a bad decision during the heat of the argument and concluded that he did something he normally would not do because he was angry. She admitted that Johnson needed some rehabilitation and that he had been in and out of jail since he was 15 years old. Johnson’s mother stated that Johnson is a nice and intelligent person, but needs some education and some type of job skill and asked the court to give her son a second chance. The family friend stated that she had known Johnson since he was five years old and that he had been raised by his grandmother. She stated that Johnson “needs some type of intense therapy.” She described him as kindhearted and trustworthy, but angry about something.
lasThe district court reviewed Johnson’s long history of criminal behavior beginning when Johnson was a juvenile and noted that his adult record included drug charges and crimes against the person, as well as a history of noncompliance with conditions of parole, having his parole revoked on several occasions. Johnson’s history included a 1997 charge for attempted second degree murder for firing five rounds at a person in a parking lot. In March 2003, Johnson was charged with simple battery in response to a domestic disturbance for throwing a phone book and striking his sister in the chest during an *522 argument over a house key. In April 2003, he was charged’ with trespassing, battery on an officer and resisting by flight for driving his bicycle into the legs of a police officer and then fleeing the officer.
Johnson also had two additional prior convictions for crimes against persons. In July 2003, he pled guilty to a reduced charge of simple robbery and received a six-year sentence of hard labor, after robbing a man at gunpoint. On May 7, 2004, while serving time, Johnson pled guilty to a charge of aggravated battery and was sentenced to one year at hard labor, to run-consecutive with any other sentence previously imposed, after fighting with yet another inmate and hitting him in the face, with a lock.
The trial court noted Johnson’s history of convictions for possession and distribu-' tion of cocaine. In 1999, Johnson was convicted for possession of cocaine and received a sentence of five years at hard labor. In 2011, Johnson was convicted for distribution of cocaine and received a sentence of six years at hard labor.
The district court allowed Johnson to provide a statement. Johnson offered excuses for his criminal history, as well as' the charges in the case at Unhand, and stated that he thought he would get far less time. Johnson argued that the sentence was not what he had bargained to’ get when he pled guilty as he thought it. would be far less time served. He argued that he agreed to the plea agreement to avoid a habitual offender charge; the lack of evidence showing Edwards burn was, serious; the lack of evidence on the dismissed charge of robbery and that he had: been “bamboozled” by his lawyer.
Adequate La. C. Cr. P. art. 894.1 compli--anee by the trial court is shown on the record before this court. The district court recognized that Johnson was 39 years old at the time he committed the crime, the father of one child, and had a limited work history and a history of drug dependence. The district court identified numerous .aggravating factors supporting Johnson’s sentence, including the extreme and deliberate cruelty and. permanent harm caused to the victim; the victim’s injuries were caused by a dangerous weapon (a hot iron); there was undue risk that the defendant would re-offend; and Johnson had received a favorable plea agreement.
Furthermore, the record supports a finding that the sentence was not grossly out of proportion to the Seriousness of the offense. Johnson has a long history of violence against persons, which often included the use of dangerous weapons, such as a gun, a lock, and a hot iron. Johnson’s abuse of Edwards is particularly egregious. ■ During the sentencing hearing, Johnson showed no remorse and accepted no blame for his actions, referring to himself as an “innocent man” wrongly accused of'a crime. Furthermore, the plea agreement dismissing the remaining charges and forgoing a prosecution as a habitual offender provided a significant reduction in his sentencing exposure. Considering the particular facts of this case, we find lanthat the district court did not abuse its discretion in sentencing Johnson to.-40 years without the benefit of probation, parole,- or suspended sentence.
This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence. ,
CONVICTION AND SENTENCE AFFIRMED.

. Since amendment by 2015 La. Acts No, 440, effective 8/1/2015, the definition of "serious bodily injury” for purposes of this offense has been moved to Paragraph B(6).

. The state mentioned the photographs several times in proceedings. The prosecutor indicated that (during a hearing prompted by the defendant's motion to obtain the victim's medical records regarding the severity of the burn injury) the state planned to use the photos at trial as their evidence of "serious bodily injury.” The prosecutor also stated that he provided the photographs to the defendant; however, they are not part of the record on appeal. Additionally, the record does not indicate either way whether the court viewed the photographs in a PSI or at the guilty plea or sentencing proceedings in its determination that "serious bodily injury” occurred.

. The court made several attempts to appoint an attorney with whom the defendant would be satisfied. Defendant tried to get the court to appoint a new lawyer and grant him a continuance at the last pretrial conference a day before trial. The court refused and denied the motions.

. Domestic abuse battery is the intentional use of force or violence committed by one household member upon the person of another household member,

. Paragraph B(1) defines "burning” as an injury to flesh or skin caused by heat, electricity, friction, radiation or any other chemical or thermal reaction. Paragraph B(5) defined' "serious bodily injury” as bodily injury that involves unconsciousness, extreme physical pain, or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of-death.

. La. C. Cr. P. art. 464 states: The indictment shall be a plain, concise, and-definite written statement of the essential facts constituting the offense charged. It shall state for each count’the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

. We note at the outset that the better practice by the district attorney’s office for domestic abuse battery by burning would be to charge the defendant with a violation of either La. R.S. 14:35.3, or alternatively La. R.S. 14:35.3(B)(1)(3) or 14:35.3(M), and in each instance specify the conduct that makes up the elements of the offense. See, 17 La. Civ. L. Treatise, Criminal Jury Instructions, Section 10:34:50 (3d ed.). The defendant is charged with the crime of domestic abuse battery when the domestic abuse battery is committed by an intentional burning that results in serious bodily injury to the victim. Id.