Judgment rendered April 5, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,951-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

RODERICK T. BRANCH                          Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Franklin, Louisiana
Trial Court No. 2020-394F

Honorable Glynn David Roberts *(Ad Hoc)*, Judge

* * * * *

LOUISIANA APPELLATE PROJECT                 Counsel for Appellant
By: Bruce Gerard Whittaker

PENNY WISE DOUCIERE                          Counsel for Appellee
District Attorney

CAROLINE HEMPHILL
AMANDA MICHELE WILKINS
Assistant District Attorneys

* * * * *

Before COX, HUNTER, and MARCOTTE, JJ.

MARCOTTE, J.

This appeal arises from the Fifth Judicial District Court, Parish of Franklin, the Honorable Glynn David Roberts presiding *ad hoc*. Defendant, Roderick Branch, pled guilty to second-degree murder and was sentenced to imprisonment at hard labor without benefits. Branch now appeals arguing that the trial court erred in denying his motion to withdraw his guilty plea. For the following reasons, his conviction is affirmed, his sentence is vacated, and the case is remanded for resentencing.

## FACTS AND PROCEDURAL HISTORY

On September 8, 2020, Branch was charged by bill of indictment with: 1) count one: the second-degree murder of Darrion Wilson ("Darrion"), in violation of La. R.S. 14:30.1; 2) count two: possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1; and 3) count three: aggravated flight from an officer where human life is endangered, in violation of La. R.S. 14:108.1. Counts one and two occurred on August 20, 2020. Count three occurred on August 21, 2020.

On February 1, 2022, during jury selection for his trial, Branch elected to plead guilty as charged to second-degree murder; his remaining counts were dismissed, and the state agreed not to charge Branch as a habitual offender. The trial court conducted a guilty plea colloquy pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

Branch stated that he was living with his father in Winnsboro, Louisiana at the time of his offenses, but he lived in Wisconsin prior to that doing construction and other work. At the time of his guilty plea, Branch was 42 years old, and he attended school through the 10th grade. Branch said that he was not under the influence of any drugs or alcohol that

prevented him from being competent to plead guilty. Branch stated that he was satisfied with his attorney's representation. The trial court recited the statutory description of second-degree murder under La. R.S. 14:30.1, and Branch affirmed that he understood the description. The trial court asked Branch if he understood that the sentence for a conviction of second-degree murder is life imprisonment without benefits, and Branch affirmed that he did. The trial court then apprised Branch of the rights he was foregoing by pleading guilty.

The trial court informed Branch that he was giving up his right to a trial by jury where the state was required to prove his guilt beyond a reasonable doubt; Branch responded that he understood. The trial court advised Branch that he had the right to confront and cross-examine the witnesses called to testify against him; he affirmed that he understood. The trial court told Branch that he could not be compelled to testify against himself, but that he could testify on his own behalf and present evidence in his defense; Branch indicated that he understood. Branch stated that he understood that by pleading guilty he was giving up those rights. He affirmed that no one threatened him or made promises to him regarding his case. Branch confirmed that no one had made promises to him about his sentence.

The state then provided a factual basis for Branch's guilty plea. The state said:

> [O]n the evening of August 20, 2020, Roderick T. Branch, the defendant, did commit second-degree murder of Darrion Wilson. This occurred on Polk Street in Winnsboro, Franklin Parish, Louisiana, using a hand gun. The doctor, Frank Peretti removed two projectiles from Darrion Wilson, two shots; one was located in the back and one was located in the chest. And he died instantly. And what I'd like to introduce…as S-1 the

2

surveillance camera footage from August 20, 2020, from Polk Street; also the transcript of the motion to suppress hearing which is included [as] an exhibit, which was the audio recording of the defendant's statement to law enforcement Officer Jerry Davis, and the transcript of that statement where he confessed. And the investigative report of Officer Jerry Davis.

Officer Davis' report states that on August 20, 2020, he was dispatched to the corner of Polk and Mike Streets in Winnsboro, where he observed a black male lying face down in the road. The man was transported to the hospital where he later died. Officer Davis spoke with eyewitnesses who reported that a group of "boys" were walking around the corner of Polk and Mike Streets. One witness stated that Darrion, who was wearing a black shirt, was at the front of the group of boys "walking fast." A witness reported that a black male in a white shirt shot a black male in a black shirt and then walked off as the other male fell to the ground. Witnesses informed Officer Davis that the shooter lived "around the corner" with his father, whose name was Robert Wright.

Officer Davis spoke with witness Maurice James; his report states:

Mr. James stated that he and the victim (Darrion Wilson) were together all that day and Darrion's gun came up missing. That's when Darrion took Mr. Branch's nephew's gun and walked off. Then Mr. Branch asked for a weapon from his nephew and started walking behind Darrion asking for the gun back, Darrion wouldn't give it back. [T]hat's when Branch shot Darrion in the street and ran to Mr. Wright's house and got in his car and sped off somewhere.

Officer Davis then sought a warrant for Branch's arrest. When located, Branch fled law enforcement and was later apprehended. Officer Davis' report then stated:

Officer Jerry Davis went to the Franklin Parish Detention Center to do a recorded interview with [Branch]. While there he was read his Miranda Rights in which he signed, and gave a voluntary statement. [Branch] then stated that Darrion and him

3

were playing dominoes and having a good time. He then began to cry saying, I don't care about the stuff I do, but I do care about hurting somebody that didn't deserve it. [Branch] went on to say he (Darrion) didn't deserve it. It wasn't an accident, then he said it was an accident. [Branch] then stated that Darrion grabbed the gun out of a vehicle after they left the store. Darrion then began to walk down the street with the gun in his hand; Branch then told him to put the gun up that's when Darrion put the gun in his pocket. Branch stated that he asked for the gun repeatedly but Darrion wouldn't give the gun back. Branch stated that Darrion cocked the gun and told him he had one in the chamber. Branch then went on to say that he shot Darrion in the back, that was the only place he remembered shooting Darrion, but he did remember hearing three shots. Later that evening I found a video of the shooting where Branch walked behind Darrion and later shot him in the back in the chest area.

The transcript of Branch's confession corroborates what Officer Davis described in his report. The surveillance camera footage depicts two men, one wearing a white shirt and the other wearing a black shirt walking down the road. The man wearing the black shirt walks ahead of the man in the white shirt. The man in the white shirt raises a gun and shoots the victim in the back. The victim walks back towards the shooter, passes him, and then turns back towards him. The shooter then shoots the victim again in the chest. The victim falls to the ground and lays still.

Branch admitted that the factual basis was true and correct; defense counsel affirmed that the factual basis was accurate. Defense counsel confirmed that he was satisfied that Branch's constitutional rights were observed and that he was entering into his plea freely, voluntarily, and with an understating of the charge and the consequences of pleading guilty. The trial court accepted Branch's plea as knowing, intelligent, and voluntary and that there was a factual basis for the plea. The trial court ordered that a presentence investigation report ("PSI") be prepared. A written and signed guilty plea was filed into the record.

4

Branch then filed a pro se motion to withdraw his guilty plea. That motion does not appear in the record, and the clerk for the district court informed this court that the pro se motion was never presented for filing in the district court's clerk's office. However, on April 1, 2022, the state filed an opposition to Branch's motion to withdraw his guilty plea which stated that Branch's motion was filed on March 22, 2022. Also, the trial court heard arguments and ruled on the motion at his sentencing hearing, where the court referenced reading the motion Branch "filed."

On April 1, 2022, a sentencing hearing was held. The trial court first heard arguments and considered Branch's motion to withdraw his guilty plea prior to sentencing him. Defense counsel, Kevin Johnson ("Atty. Johnson"), stated that he had no knowledge of Branch's pro se motion to withdraw his guilty plea until just before the sentencing hearing began and he would not be adopting the motion. Atty. Johnson said that he did not think the motion was timely filed, and, after conferring with Branch, he believed his motion to withdraw his guilty plea was "more like a sentencing memorandum" where he sought leniency from the court. Atty. Johnson stated that Branch was not denying that he shot the victim.

The state provided a brief argument referring to the written opposition it filed in open court. In its written opposition, the state argued that Branch's plea was voluntarily and intelligently made; his plea was explained to him by the assistant district attorney, and he was informed that his sentence would be life imprisonment. The state maintained that Branch did not object or ask for clarification and he affirmed that he understood his sentence. The state observed that Branch was fully informed of the rights he was giving up and the consequences of his guilty plea. The state argued that

Branch was not misled or provided ineffective assistance of counsel and that there was strong evidence of actual guilt.

The trial court referred to Branch's PSI in which he first claimed he was acting in self-defense, but later claimed he shot Darrion by accident. The trial court then allowed Branch to argue his motion. Branch stated that Atty. Johnson lied to him and that he didn't shoot Darrion accidentally, "because I did pull the trigger." Branch also appeared to claim that an investigator or a member of law enforcement counseled him to plead guilty, but then later Branch seemed to state that the investigator may have rather offered him religious counseling. Branch stated that he sought leniency from the court. He stated that it hurt him that he "took a life," and he apologized several times to Darrion's family.

Atty. Johnson then addressed the court and stated that he used his 19 years of experience in criminal law to evaluate Branch's case and determine whether to take his case to trial. Atty. Johnson stated that Branch made a confession, which he sought to have suppressed without success. Atty. Johnson said that he received discovery from the state about Branch's case not long before the trial, which he sought to have delivered to Branch. Atty. Johnson stated that the documents he mailed to Branch were returned to him unopened.[1] Atty. Johnson stated that he was prepared to go to trial and they were in the middle of jury selection when Branch, on his own, decided he wanted to plead guilty. Atty. Johnson averred that he did not lie to Branch or trick him into pleading guilty. Atty. Johnson stated that Branch spoke with the victim's mother prior to pleading guilty.

_____

[1] Atty. Johnson later gave the unopened parcel of documents to Branch in open court.

The state responded stating that Branch understood what was going on at the time of his guilty plea and that two of his other charges were dismissed and the state agreed not to charge him as a habitual offender. The trial court stated that Branch's plea was freely, knowingly, and voluntarily given and that there was a factual basis for the plea.

The trial court then referenced the language in the written plea agreement, which Branch approved. The trial court stated that there was no evidence to support Branch's contention that he acted in self-defense and that he did not intentionally shoot Wilson. The trial court also found that there was no evidence to indicate that Branch was tricked into pleading guilty and that his *Boykin* exam and plea agreement clearly show he was not coerced into pleading guilty. The trial court denied the motion.

The trial court then stated:

> The penalty for second-degree murder is mandated by statute, thus the court does not have any discretion. Accordingly, it is the order of this court that the defendant Roderick T. Branch is sentenced to imprisonment at hard labor under the supervision of the Department of Corrections without benefit of parole, probation, or suspension of sentence.

Notably, the trial court did not use the term "life" in sentencing Branch, according to the sentencing transcript. Branch was given credit for time served and was advised of his appeal and post-conviction relief time limits. Branch now appeals.

## DISCUSSION

Branch's sole assignment of error is that the trial court erred in denying his motion to withdraw his guilty plea. Branch argues that the trial court abused its discretion in denying his pro se motion to withdraw his guilty plea, because his plea bargain "was no bargain at all" as he pled guilty

7

to a crime which carries a mandatory life sentence and he gained nothing in return. Branch states that his guilty plea was not knowing and intelligent, therefore it should be set aside. Branch contends that the absence of his written motion to withdraw his guilty plea leaves him and this court at a disadvantage. Branch states that the record shows that he and his trial counsel did not see eye-to-eye. Branch points out that Atty. Johnson "disavowed" his desire to withdraw his guilty plea and argued against it being granted on a basis not raised by the state.

Branch states that the bargain that he struck with the state was of no benefit to him given that the mandatory sentence for second-degree murder is life at hard labor. He claims that he was induced to plead guilty under the illusion that there was a plea agreement by which he would benefit. He argues that the terms of the bargain laid out in his plea agreement as understood by him were not satisfied, making the guilty plea not knowing and intelligent. Branch asks that this court set aside his guilty plea and remand his case for further proceedings.

The state argues that Branch has provided no legally-recognized grounds as to why his plea was not knowingly and intelligently entered. The state contends that the trial court did not abuse its discretion in finding that Branch's guilty plea was knowingly and voluntarily rendered or in denying his motion to withdraw his guilty plea. The state argues that the trial court conducted a full *Boykin* colloquy in which it asked Branch about his education level, age, work experience, and confirmed that he had not taken any medication, narcotics, nor consumed any alcohol that would have impacted his ability to think clearly. The state maintains that Branch stated

8

that he understood the proceedings and was satisfied with his attorney's representation.

The state argues that the trial court defined the charge of second-degree murder for Branch and explained the mandatory life sentence without benefits; Branch stated that he understood the charge to which he was pleading guilty and the sentence. The state contends that Branch was informed of the three rights he was waiving by pleading guilty and he stated that he understood he was waiving those rights. The state points out that there was strong evidence that Branch killed Wilson, including an audio recording and transcript of Branch's confession to law enforcement and surveillance video footage showing Branch shooting Wilson in the back and chest. The state maintains that Branch agreed that the state's factual basis for his plea was correct.

The state argues that Branch received the benefit of having the possession of a firearm by a convicted felon and aggravated flight charges dropped and the state agreed not to bill him as a habitual offender by pleading guilty. The state contends that Branch has had a change of heart about pleading guilty, which is not grounds for allowing him to withdraw his guilty plea. The state further argues that La. C. Cr. P. art. 556.1 does not require that the state offer a "bargain" in return when a defendant pleads guilty. The state asks that this court affirm defendant's conviction and sentence.

Upon motion of the defendant and after a contradictory hearing, which may be waived by the state in writing, the court may permit a plea of guilty to be withdrawn at any time before sentence. La. C. Cr. P. art. 559(A). The discretion to allow the withdrawal of a guilty plea under La. C.

9

Cr. P. art. 559(A) lies with the trial court and such discretion cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. *State v. McGarr*, 52,641 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1189. A defendant has no absolute right to withdraw a guilty plea. *Id.*

Under La. C. Cr. P. art. 556.1, a valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. La. C. Cr. P. art. 556.1 also provides that prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. When the record establishes that an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. *Boykin v. Alabama, supra*; *State v. McGarr, supra.*

An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. *Boykin, supra*; *State v. McGarr, supra*; *State v. Johnson*, 51,430 (La. App. 2 Cir. 07/05/17), 224 So. 3d 505. A plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea, including insufficiency of the evidence. *State v. Crosby*, 338 So. 2d 584 (La. 1976); *State v. McGarr, supra.* A validly entered guilty plea, or plea of *nolo contendere*, waives any right a defendant might have had to question the merits of the state's case and the factual basis underlying the conviction. *State v. Bourgeois*, 406 So. 2d 550 (La. 1981); *State v. McGarr, supra*; *State v. Hardy*, 39,233 (La. App. 2 Cir. 01/26/05), 892 So. 2d 710.

When ruling on a motion to withdraw a guilty plea, the trial court should look beyond the *Boykinization* and consider all relevant factors. *State v. McGarr, supra*; *State v. Griffin*, 535 So. 2d 1143 (La. App. 2 Cir. 1988). A court, when called upon to ascertain an accused's state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. *State v. Lewis*, 421 So. 2d 224 (La. 1982); *State v. Galliano,* 396 So. 2d 1288 (La. 1981); *State v. McGarr, supra.*

In order to properly exercise its discretion and in order for the appellate court to review the exercise of that discretion, the trial court should conduct a hearing or inquiry on defendant's motion to withdraw a guilty plea. *State v. Lewis, supra*; *State v. McGarr, supra.* Reasons supporting withdrawal of the plea would ordinarily include factors bearing on whether the guilty plea was voluntarily and intelligently made, such as breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like. A mere change of heart or mind by the defendant as to whether he made a good bargain would not ordinarily support allowing the withdrawal of a bargained guilty plea. *Id.*

The record clearly reflects that Branch was properly informed of his rights at the time his guilty pleas were accepted. While Branch's written motion to withdraw his guilty plea is not included in the record, he was granted an opportunity to explain why he wanted to withdraw his plea. Branch stated that he sought leniency from the trial court with regard to his sentence. Branch was 42 at the time he was sentenced and he had a 10th grade education. He confirmed that he was not under the influence of drugs

11

or alcohol at the time of his plea, and he stated that he was satisfied with Atty. Johnson's representation. The trial court properly informed Branch of the charge to which he was pleading guilty and that the sentence was mandatory life imprisonment at hard labor. Branch acknowledged that he understood the nature of the charge and the punishment.

Additionally, the state provided a factual basis for Branch's plea which shows there is overwhelming evidence of actual guilt, in the form of eyewitness testimony, a video recording of the murder, and Branch's confession to the crime. Branch complains that he did not receive anything in return for his guilty plea. However, his remaining counts were dismissed and the state agreed not to bill him as a habitual offender. Branch's assignment of error lacks merit and his conviction should be affirmed.

Errors Patent Discussion

We reviewed the record for errors patent in accordance with La. C. Cr. P. art. 920.

First, according to the sentencing transcript, the trial court failed to specify a term of imprisonment, but solely sentenced Branch to "imprisonment at hard labor." The sentence for second-degree murder is life imprisonment at hard labor without benefits. La. R.S. 14:30.1. If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence. La. C. Cr. P. art. 879. The trial court's failure to use the term "life" makes Branch's sentence indeterminate. Therefore, defendant's sentence must be vacated and remanded for resentencing.

Second, the minutes for Branch's sentencing must be corrected. When the record was lodged with this court, it did not include minutes of

12

sentencing. The record was later supplemented with the sentencing minutes which accurately stated that the trial court sentenced Branch to "imprisonment at hard labor." Later, at the state's request, the minutes were amended to state that Branch was sentenced to "life imprisonment at hard labor." This made the minutes and the sentencing transcript inconsistent. Due to the disparity between the minutes of sentencing and the transcript of sentencing, the trial court is ordered to amend the minutes of sentencing to accurately reflect the sentencing transcript.[2]

## CONCLUSION

The defendant's conviction is affirmed and his sentence is vacated and remanded for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

---

[2] We note also that the minutes of sentencing do not reflect that Branch's motion to withdraw his guilty plea was argued and denied.

13