STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**23-487**

STATE OF LOUISIANA

VERSUS

CHARLES LEE FONTENOT

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 11377-17
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

**********

**VAN H. KYZAR**
**JUDGE**

**********

Court composed of Van H. Kyzar, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**AFFIRMED.**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Charles Lee Fontenot**

**Charles Lee Fontenot**
**MPEY/Mag-2**
**Louisiana State Penitentiary**
**Angola, LA 70712-9818**
**DEFENDANT/APPELLANT:**
**In Proper Person**

**Stephen C. Dwight**
**District Attorney**
**David S. Pipes**
**Denisse Parrales**
**Jason Trevor Brown**
**Assistant District Attorneys**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**KYZAR, Judge.**

Defendant appeals his convictions resulting from his guilty pleas to two counts of indecent behavior with a juvenile and two counts of aggravated crime against nature. Defendant further appeals his sentences of twenty years at hard labor on each count of the former and fifty years at hard labor on each count of the latter, all to run consecutively, without benefit of probation, parole, or suspension of sentence. For the reasons set forth, we affirm the convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

On June 6, 2017, the State filed a bill of information charging Defendant, Charles Lee Fontenot, with two counts of indecent behavior with a juvenile under the age of thirteen, in violation of La.R.S. 14:81, and two counts of aggravated crime against nature with a juvenile under the age of thirteen and an offender over the age of seventeen years, in violation of La.R.S. 14:89.1. On June 19, 2017, Defendant entered a plea of not guilty to each offense. Throughout the course of the case, Defendant filed numerous pre-trial motions, including a motion to recuse the trial judge, which was denied on July 29, 2019.

On November 20, 2019, the presentation of evidence commenced at trial. The following day, Defendant withdrew his not guilty pleas and pled guilty to each offense. No sentencing recommendation was made in connection with the plea. As the case was resolved by guilty pleas, the facts were not fully developed at a trial, although the mothers of the victims testified at the beginning of the trial before Defendant pled guilty. However, the State asserted the following facts at the plea hearing:

MS. PARRALES:

    With regards to the indecent behavior with a juvenile, Your
    Honor, Count I, Charles Lee Fontenot on or about July 15, 2015,
    through April 4, 2017, did commit indecent behavior with a juvenile

with the intention of arousing or gratifying the sexual desires of either person by committing a lewd or lascivious act upon the person or in the presence of the minor, whose initials are K.S., whose date of birth is September 26, 2006, a child under the age of 13 wherein there's an age difference of greater than two years between the two persons.

The minor would have testified, Your Honor, that the defendant would come into her room almost every night, take her out of her room, bring her into the living room, lay her on the couch, and touch her with his hands. He would touch her around her bikini area, under her clothes. It happened more than one time.

He threatened her not to tell anybody. One time he was getting out of the shower and he asked her to get something. She brought it to the bathroom and he made her touch his penis. She said he would say, touch it, touch it, grab it. She said he would take her hand and make her grab it. She said that she would let go and then he'd make her grab it again.

. . . .

That's Count I and Count II, Judge.

. . . .

With regards to Count III, Your Honor, the defendant, Charles Lee Fontenot, on or between July 15, 2015, through April 7, 2017, the defendant, Charles Lee Fontenot, did commit aggravated crime against nature by having sexual intercourse wherein he penetrated the vagina of the victim whose initials are T.F., whose date of birth is February 16, 2005, a person under the age of 13, and the offender is at least three years older than the victim.

This victim, Your Honor, is his biological daughter. She would've testified that the defendant would look at her with her clothes off. He told her that he needed to look at her to see if she had a hole, to see if she could get pregnant when she grew up. He told her to lay down in the bed and he was looking at her and then he was touching her. She started crying and she asked him to stop and when she got up she saw his exposed penis. She felt pressure up against her.

She would testify that he was playing around with her private. He licked her private and she felt something hard pushing in.

This happened on more than one occasion. This happened within the confines of Calcasieu Parish.

. . . .

2

THE COURT:

. . . .

All right, Count IV.

MS. PARRALES:

Charles Lee Fontenot, on or between, July 15, 2015, and April 7, 2017, the defendant did commit aggravated crime against nature by committing oral sexual battery on the victim whose initials are N.F., whose date of birth is September 13, 2006, a person under the age of 13, and the offender is at least three years older. This victim, Your Honor, is the defendant's minor biological daughter.

She would've testified, Your Honor, that she remembers that when her father was putting her younger brother to sleep he told her to take a shower. She did. And then he told her to sit on the couch. She would've stated that he told her that he was going to show her what boys and girls do.

She would've testified that he showed her naked people on his phone and they were doing what boys and girls do. He showed her pictures on YouTube on his phone. She would've told you that what they were doing is engaging in sex. At that point in time her father licked her privates. She said it was -- or she would have said that it was very disgusting.

This happened one time in the living room at their house in DeQuincy. This occurred within the confines of Calcasieu Parish.

On December 16, 2019, Defendant filed a pro se motion to withdraw his guilty pleas, which the trial court subsequently denied following a January 10, 2020 hearing.

On June 5, 2020, Defendant filed a motion to reconsider the motion to recuse the trial judge, a motion to continue sentencing, and a motion to reconsider the motion to withdraw his guilty pleas, all of which were denied. On that same day, Defendant was sentenced to twenty years at hard labor on each count of indecent behavior with a juvenile and fifty years at hard labor on each count of crime against nature. The trial court also ordered the sentences to be served without the benefit of

3

probation, parole, or suspension of sentence and to run consecutively, equating to a 140-year sentence.

On June 30, 2020, Defendant filed a motion to reconsider his sentence. Following a hearing on December 18, 2020, the trial court denied Defendant's motion and maintained his original sentence. Subsequently, on January 26, 2021, Defendant filed an application for post-conviction relief, which was denied on January 22, 2022. He filed an additional application for post-conviction relief on July 6, 2021. Ultimately, the trial court granted Defendant an out-of-time appeal on January 24, 2023.

Defendant now appeals, asserting two counsel-filed assignments of error and two pro se-filed assignments of error.

## DISCUSSION

### *Motion to Withdraw Guilty Plea*

In his first pro se assignment of error, Defendant argues that the trial court erred in denying his motion to withdraw his guilty pleas as he was not represented by counsel during the hearing on the motion to withdraw. He also contends that the trial court failed to inform him of his entitlement to counsel during the hearing since he did not request to represent himself. Defendant argues that the State had the burden of proving that he knowingly and intelligently waived his constitutional right to assistance of counsel. He further claims that he entered his guilty pleas under duress and coercion by his counsel as well as the erroneous denials of his pretrial motions. Defendant asserts that he would not have pled guilty in the absence of those circumstances.

A guilty plea operates as a waiver of all non-jurisdictional defects in the trial court proceedings occurring prior thereto. *State v. Crosby*, 338 So.2d 584 (La.1976). We must, however, review the question of the constitutionality of the guilty plea for

4

if it was not validly entered, it must be set aside. "[I]n order for a plea of guilty to be valid (therefore precluding on appeal a review of prior non-jurisdictional defects), it must be an intelligent, understanding and voluntary waiver of the defendant's constitutional right to a jury trial with all of the consequences and rights attending such a trial[.]" *State v. Torres*, 281 So.2d 451, 453 (La.1973).

We review the decision of the trial court to deny the motion to withdraw for an abuse of discretion:

> The discretion to allow the withdrawal of a guilty plea under La. C. Cr. P. art. 559(A) lies with the trial court and such discretion cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. *State v. Martin*, 48,045 (La. App. 2 Cir. 5/15/13), 115 So.3d 750. A defendant has no absolute right to withdraw a guilty plea. *Id.*

*State v. Clause*, 22-545, p. 4 (La.App. 3 Cir. 1/25/23), 354 So.3d 1269, 1274 (quoting *State v. McGarr*, 52641, 52,642, p. 10 (La.App. 2 Cir. 4/10/19), 268 So.3d 1189, 1196).

Defendant first claims that the denial of his motion was an error, in part, because he was not represented by counsel during the hearing on the motion. We disagree. This is not a case where Defendant did not have counsel since his appointed counsel, Mr. Casanave, had neither withdrawn from the case nor been withdrawn by order of the trial court. Mr. Casanave was present at the hearing and participated in it to some extent. The trial court simply gave Defendant the right to speak and argue on his own behalf regarding those points he wished to make. The question is whether Defendant had the right to be represented by new counsel during the hearing under the circumstances presented, where he asserted his counsel's ineffectiveness and the pressure placed on him to plead. We think not, but the resolution of that issue is not necessary to resolve Defendant's complaint.

Defendant, while represented by Mr. Casanave, was given a full hearing on his motion to withdraw. He was then given another opportunity to present and argue

5

his request to withdraw, while represented by his new counsel, Mr. Cormier, during the hearing on his motion to reconsider his motion to withdraw, which was heard just prior to his June 5, 2020 sentencing. The same grounds, as well as new grounds, were presented during the hearing, after which the trial court denied the motion to reconsider, thus, again denying Defendant's motion. Essentially, Defendant was given two opportunities to present his motion to withdraw, and he was fully represented by counsel during the second hearing. Thus, considering the unique circumstances of this case, we find that Defendant was not denied his right to counsel in considering the motion to withdraw. Any error that may have occurred by proceeding with the original hearing under the circumstances presented, was cured when the trial court heard the same arguments on the motion to reconsider while Defendant was represented by his newly appointed counsel.[1]

Having determined that Defendant was not denied the right to counsel in his motion to withdraw, we turn to the remaining allegations of error in the denial of the motion: that the pleas were entered under duress and were not free and voluntary. We find no merit in these arguments.

In *McGarr*, 268 So.3d at 1196–97, the second circuit expounded on the burden of proof to set aside a guilty plea:

> Under La. C. Cr. P. art. 556.1, a valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. La. C. Cr. P. art. 556.1 also provides that prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. When the record establishes that an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Cooper*, 52,408 (La.App. 2 Cir. 11/08/18),

---

[1] During a previous hearing the same day, the State pointed out to the trial court that Defendant had multiple attorneys appointed to represent him, to which representation he repeatedly objected.

261 So.3d 975; *State v. Martin*, [48,045 (La.App. 2 Cir. 5/15/13), 115 So.3d 750].

An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. *Boykin, supra*; *State v. Johnson*, 51,430 (La.App. 2 Cir. 07/05/17), 224 So.3d 505; *State v. Kennedy*, 42,850 (La.App. 2 Cir. 01/09/08), 974 So.2d 203. A plea of guilty normally waives all nonjurisdictional defects in the proceedings prior to the plea, including insufficiency of the evidence. *State v. Crosby*, 338 So.2d 584 (La. 1976); *State v. Johnson, supra*; *State v. Stephan*, 38,612 (La.App. 2 Cir. 08/18/04), 880 So.2d 201. A validly entered guilty plea, or plea of *nolo contendere*, waives any right a defendant might have had to question the merits of the state's case and the factual basis underlying the conviction. *State v. Bourgeois*, 406 So.2d 550 (La. 1981); *State v. Cooper, supra*; *State v. Hardy*, 39,233 (La.App. 2 Cir. 01/26/05), 892 So.2d 710.

When ruling on a motion to withdraw a guilty plea, the trial court should look beyond the *Boykinization* and consider all relevant factors. *State v. Griffin*, 535 So.2d 1143 (La.App. 2 Cir. 1988); *State v. Green*, 468 So.2d 1344 (La.App. 1 Cir. 1984); *State v. Banks*, 457 So.2d 1264 (La.App. 1 Cir. 1985). A court, when called upon to ascertain an accused's state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. *State v. Lewis*, 421 So.2d 224 (La. 1982); *State v. Galliano*, 396 So.2d 1288 (La. 1981); *State v. Griffin*, [53,276 (La.App. 2 Cir. 1/15/20), 289 So.3d 212].

In order to properly exercise its discretion and in order for the appellate court to review the exercise of that discretion, the trial court should conduct a hearing or inquiry on defendant's motion to withdraw a guilty plea. *State v. Lewis, supra*; *State v. Griffin, supra*. Reasons supporting withdrawal of the plea would ordinarily include factors bearing on whether the guilty plea was voluntarily and intelligently made, such as breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like. A mere change of heart or mind by the defendant as to whether he made a good bargain would not ordinarily support allowing the withdrawal of a bargained guilty plea. *Id.*

We first review the record to determine whether Defendant was informed of and waived his rights to a trial by jury, to confront his accusers, and his privilege against self-incrimination, as an express and knowing waiver of those rights must appear on the record rather than be presumed. *Id.*

On November 21, 2019, Defendant's counsel advised the trial court that Defendant wished to change his plea of not guilty to guilty to all four counts. Thereafter, Defendant stated his full name, age, and education level. He further acknowledged that he had an opportunity to discuss his case with his counsel and that he read, understood, and signed the "Felony Plea of Guilty and Waiver of Constitutional Rights" form, which form he had also discussed with his counsel. Thereafter, the trial court noted the crimes which were being pled to as well as the minimum and maximum penalties for each crime.

The trial court then proceeded to inform Defendant of his *Boykin* rights.[2] It informed Defendant that by entering a plea of guilty for each offense, he was giving up certain legal rights, including the right to a speedy and public jury trial; the right to continue his jury trial; the right to the attorney of his choice; the right to see, hear, and question witnesses; the right to subpoena witnesses to testify on his behalf; the right against self-incrimination; the right to presumed innocence; and the right to appeal from a guilty verdict. Thereafter, Defendant asserted that he wanted to proceed to enter a guilty plea to each offense. When the trial court questioned Defendant as to his state of mind and whether he was "under the influence of drugs, alcohol, or other mind-altering substance[]" or had "been forced, threatened, or pressured" into entering the guilty pleas, Defendant denied such. Defendant also acknowledged that the trial court had the discretion to sentence him "to any sentence allowed by the law."

The State then presented the factual basis for each charge, after which the following colloquy occurred:

THE COURT:

Did you hear those facts, Mr. Fontenot?

---

[2] *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).

MR. FONTENOT:

Yes, Your Honor.

THE COURT:

As those facts relate to the charge in Calcasieu Parish--

MR. FONTENOT:

Yes, Your Honor.

THE COURT:

--do you admit to those facts?

MR. FONTENOT:

Yes, Your Honor.

THE COURT:

All right.

. . . .

All right. So, based on your admission to those facts formally to the charges of indecent behavior, Count I and Count II, both counts of indecent behavior with a juvenile, how do you plead?

MR. FONTENOT:

Guilty.

THE COURT:

All right. I find your guilty plea to each of those counts has been freely and voluntarily given and order it to be entered of record. I do find there is a sufficient factual basis to support the charge.

Now, on the aggravated crime against nature.

. . . .

All right, Mr. Fontenot, did you hear those facts?

MR. FONTENOT:

Yes, Your Honor.

9

THE COURT:

Do you admit to those facts?

MR. FONTENOT:

Yes, Your Honor.

THE COURT:

Based on your admission to those facts formally to the charge of aggravated crime against nature under Count III, how do you plead?

MR. FONTENOT:

Guilty.

THE COURT:

All right. I find your guilty plea to that count has been freely and voluntarily given and order it to be entered of record.

All right, Count IV.

. . . .

All right, Mr. Fontenot, you heard those facts?

MR. FONTENOT:

Yes, Your Honor.

THE COURT:

Do you admit to those facts?

MR. FONTENOT:

Yes, Your Honor.

THE COURT:

All right. Based on your admission to those facts formally to the charge of aggravated crime against nature under Count IV, how do you plead?

MR. FONTENOT:

Guilty.

10

THE COURT:

All right. I find your guilty plea to that charge has also been freely and voluntarily given and order it to be entered of record.

All right, and you do understand that even though we don't have the sex offender registration notifications forms filled out here that that will be -- that you -- because of your guilty pleas here today you will be a registered sex offender?

MR. FONTENOT:

Yes, Your Honor.

We find that the record fully establishes that Defendant was informed of and waived his rights to a trial by jury, to confront and question his accusers, his privilege against self-incrimination, and other rights attendant to trial. His express and knowing waiver of those rights clearly appears on the record, unequivocally showing a free and voluntary waiver of those rights prior to his pleas. As such, the burden shifts to Defendant to prove that despite this record, his guilty pleas were not voluntarily entered. *McGarr*, 268 So.3d 1189.

At the November 21, 2019 hearing on his motion to withdraw, Defendant asserted, in part, that he should be allowed to retract his guilty pleas due to ineffective assistance of counsel, who pressured him to plead guilty; actual innocence; inability to present evidence to prove said innocence; duress; and lack of understanding.[3] Defendant stated that on the first day of trial, his counsel, Mr. Casanave, advised him to plead guilty to prevent the victims from having to testify and so that he would not "look bad" in front of the jury. Defendant claimed that he declined to plead guilty at first, but that after Mr. Casanave informed him that he would "get credit for time served," he decided to plead guilty, thinking he would "be able to go home" that day. Defendant testified that he was "stressed out" regarding

---

[3] This claim was repeated at the hearing on the motion to reconsider the motion to withdraw.

11

the situation and that he ultimately signed the plea agreement without understanding the consequences of the plea. He concluded his argument by claiming his innocence and requesting that the trial court retract his guilty pleas so he could present evidence demonstrating his innocence.

In opposition, the State argued that Defendant had no grounds to withdraw his pleas. It argued that although Defendant attempted to claim his innocence, two witnesses testified at trial to his own admission of guilt. Moreover, the State asserted that Defendant, himself, stated that he was guilty as charged on numerous occasions prior to being *Boykinized*. The State also argued that Defendant waived his right to prove his innocence by entering the guilty pleas, which he did voluntarily. In addition, it contended that Defendant was not misrepresented by either the State or the trial court and that Defendant entered guilty pleas without the State presenting an offer.

Thereafter, the trial court gave Defendant an opportunity to respond to the State's argument. According to Defendant, he admitted to being guilty so he could visit with his children. He claimed that his ex-girlfriend, who was the mother of his two sons, told him that she would allow him to see his sons if he pled guilty.

After Defendant finished his rebuttal, the trial court stated the following:

THE COURT:

I'll give you one more chance to say something in just a minute. You know, as I looked at -- you know, I looked at your motion. You gave five reasons. It says, "The defendant is truly innocent of this crime." It says, number two, "Defendant didn't have a chance to present evidence to prove said innocence. Defendant was under duress when instructed by counsel to sign said plea. Defendant did not understand all of said plea when he was instructed to sign the plea and did not have effective counsel."

Well, let me just kind of wrap all those things up. You know, we spent a long time picking that jury in this case, and then the State -- and then opening statements were given and then the State started putting on its case. You know, the mothers of the three victims in this case took

12

the stand, your ex-wife and the -- your ex-girlfriend, the mother of the youngest victim in this case, who you had a telephone conversation with for I think Ms. Parrales said was 38-minutes long. That was an extremely powerful, powerful, piece of evidence. For you to say, and I'm just going to tell you, you know, after that, as that audio was playing, I thought wow, what is Mr. Fontenot even going to argue? How is he even possibly going to overcome his confession in this audio tape? She asked you these questions and you said, well, I'm sick. I mean you were making all these statements and acknowledging your guilt. She said how could somebody do something like this to children? And you said, look, I'm sick, I'm sick, and then you started blaming it on the drugs and she said, no, that's not -- no, no, no, don't you go there, don't you go there, and then she says, we'll, how do I know you're not going to do this to your boys? You know, you want me to bring your sons to see you. How do I know that you just not going to do this to any child that you see? You said, oh, wait, time out. I'm not a homosexual. I wouldn't do this to boys. It doesn't work that way. I mean, you know, you had this conversation to where, you know -- I mean it couldn't have been more clear that you understood --

MR. FONTENOT:

I had to convince her.

THE COURT:

I gave you your chance. Now I'm explaining to you. It was so clear that you were having this conversation. You were explaining to her and you kept saying to her that because of your love and concern for those children you were going to plead guilty because you didn't want them to have to go through any more difficulty and have to continue to ask -- to answer questions or to be asked questions about what happened to them and you wanted to get this over for them. You were going to plead guilty to end -- you know, just so they didn't have to continue to have to, you know, go through the difficulty that they were having to go through. You told her that. You said, look, don't worry. I'm going to plead guilty. She said why? Why are you going to do it? You said because I'm guilty. She said, well, why would you do that? And you said because I'm guilty. And she said, I'm trying to wrap my head around how somebody could do this, and you said because I'm sick, because I'm sick.

She was angry. She was trying to figure out how something like this could happen. You were trying to hold on and explain and justify.

Anyway, the long story short is that was powerful. That was very, very, very powerful evidence. She was a very, very powerful witness. That evidence is in the record. That evidence is there for appeal. That evidence is there. It's in the record, okay. Your ex-wife, she was a much more powerful witness than you give her credit for and then the thing is when it looked like, you know, your children -- you're saying your

children would've said all these things, your children -- if you think your children would've said, oh, mom made me say this stuff, well, even if that were the case you still had another child there that was the child of your girlfriend that said you did these things. So, I don't know how you were going to explain that, you know, but the bottom line is they were up next to testify. You know, we were at the end of the trial. The trial was almost over and yet, you know, if it was so clear that they were going to say that, that's where we were. That's the point of the trial where we were and you had the opportunity to say, okay, this is the time I've been waiting for. I've been in jail for almost three years. This is where my children are going to vindicate me and they're going to come up here and say their mother told them to say it and they're going to say there's my dad sitting there. He never did this to me, you know. Let's get them on the stand. I mean, you know, this is the time I've been waiting for. Let's get my children up there so they can say my dad never did this to me. This is the time I've been waiting for, but, you know, you didn't do that, okay. That audio was powerful. It was a clear confession. In fact, I will tell you when I was giving those jurors those certificates after your plea, I was giving them, you know, their juror certificates and their work excuses and their checks for their jury service, they actually said to me what are we even doing here? After we heard that confession, why were we even here? Why were we even going through all of this? I mean he confessed. I mean that evidence had the same effect on them as it did on me when they heard it, you know.

Now, the bottom line is, you know -- and then you say to me, you come in here, you didn't have a chance to present evidence. You had a chance. I told you that there was a jury out there. We can finish this trial right now. Let's come on in. If you're saying nothing happened, let's bring these jurors in. I don't want to play any games. Let's bring these jurors in. Let's bring them in. You said, no, no, no, I'm guilty, I'm guilty, because this isn't about -- you know, we went through all that stuff. We went through all that. These children had to go through a lot to prepare themselves. This is hard on children, very, very, very hard on children. They have to prepare themselves to get up there and take that stand to talk about -- you know, most people who are married or who have a consensual sexual relationship wouldn't want to take this witness stand and talk about even just, you know, the details of just a normal, natural, consensual sexual event that they had last night in front of all these strangers in this courtroom. So, imagine how difficult it must be for a child to have to come in and talk about something so degrading and horrible that they're saying happened to them in the courtroom. So, they have to prepare themselves and build up for that and so for them to have had to prepare themselves for that, to come in there, and then they were ready to do that, and that wasn't the first time they've had to get ready for trial because it had been continued previously.

So, you pled and then that relieved them of having to get up there and face the person that they said did this to them in front of a

courtroom full of strangers and in front of the person that they said did this to them and then -- and so to me, I thought, well, maybe you're finally, finally, doing something -- doing what you told your ex-girlfriend two years earlier on that phone call that you were going to do; that you were you going to plead so that they didn't have to go through all this trauma of having to go through, you know, the court process and that's what I thought maybe you were finally going to do even though it was -- you know, they had already had to endure everything they had to endure up to that point, but, anyway, then to say that you didn't know. First of all, I don't find it's credible, item number one or item number two, to say you were truly innocent and then say you didn't have a chance to present evidence because you did, and to say you were under duress when you made your plea. I mean -- and say you didn't understand and then to say your lawyer said you were going to get credit for time served. Your lawyer went over this plea of guilty and waiver of constitutional rights form with you. I asked you that and I know they did, your lawyer did, and he wrote on here the crimes you were pleading guilty to and the sentencing ranges, two to 25 years and the two years was without benefit of probation, parole, or suspension of sentence on each count of indecent behavior with a juvenile; aggravated crime against nature, two counts, each of which was a 25-year minimum and a 99-year maximum. The 25-years was without benefit of probation, parole, or suspension of sentence. Your lawyer went over that with you, with that mandatory minimum sentencing range, before I went over that with you and then I discussed it with you and then I discussed it with you. So, to tell me your lawyer told you you were going to get credit for time served when I know that your lawyer also went over this form with you and told you that it was a 25-year minimum without benefit of probation, parole, or suspension of sentence, mandatory minimum? I mean that's not credible to me. I mean, you know, yeah, you get credit for the time that you've served. I'm sure he told you that. Yeah, you get credit for the time that you've served in jail toward the 25 years, you know, but obviously you had -- it's not credible for you to pretend that, oh, you thought that meant if he told you you'd get credit for the time you've been in toward the 25 or whatever your sentence is ultimately that that's supposed to mean that, oh, some how [sic] you don't have to do the 25-year mandatory minimum? I mean that's not credible, Mr. Fontenot, and so, you know, look, when you've got a confession -- I'm just going to tell you this. I've been a judge for over 16 years and I've tried a lot of cases. This -- and these kind of cases are very difficult, these sex offenses of all the children are very difficult cases to try and I'm telling you, this is the most powerful and one of the strongest cases by the State that I've ever seen. It's very rare that you have such a confession and a conversation like that where the defendant, the accused, is so candidly having a conversation and confessing in such a way to where you know it's true. In other words, there's a question sometimes where people can -- I mean there's an issue sometimes where people can argue, well, maybe there was a false confession and they can try to argue it that maybe there's some reason there would've been a false confession, there's no scenario under which I can see where this could be argue[ed] to where

15

you could -- because even the stuff that you're saying, you know, it's just not credible to say -- even if she said, well, you're not going to see your kids unless you plead, well, in light of the fact that -- I mean your sons unless you were to plead to this. You know, if she's saying unless you take responsibility for what you did to your daughters, your other kids, before she would -- I mean does that mean that -- I mean I don't even know because other stuff that you said is not credible and consistent, so I don't have any reason to believe that what you're saying now is credible, you know, or happened exactly the way you said it happened, you know.

So, I mean I'm -- I just think that you're -- it would be so grossly unfair and unjust in light of the way the evidence happened, the way that trial happened, in light of the overwhelming weight of the evidence against you at that trial to allow you to withdraw your guilty plea. It would be so unfair and unjust to the victims. I mean just the overwhelming strength of the State's case and just the way everything happened. Like I said, I made sure your lawyer went over this with you. I went over this with you. So, I just don't find that any of your allegations are credible and your reasons for withdrawing your guilty plea and you're right. If you would've hired my brother-in-law I wouldn't have let him enroll in this case, even if you'd have had the money to do it. At this stage of the game, you know, you would not have been allowed to manipulate the process to try to get around me because you would've already pled guilty. You wouldn't be allowed to come in and try to get me off this case.

MR. FONTENOT:

We tried before and you denied the recusal anyway. So.

. . . .

THE COURT:

Anyway, look, that's -- I don't find that -- my ruling and all the reasons for it stand and I'm going to deny the motion to withdraw the guilty plea for all the reasons I gave and I'm going to set sentencing[.]

Following the June 5, 2020 hearing on Defendant's motion to reconsider, the trial court again denied the motion to withdraw after hearing argument from Defendant's newly-appointed counsel and after hearing more testimony directly from Defendant. The trial court concluded his ruling as follows:

THE COURT:

Mr. Fontenot, I'm going to get to that in a minute, but the bottom line is, you know -- well, I'll go ahead and address it now. Look, candid

16

advice from your lawyer about the weight of the evidence and how the evidence looks, you know, I mean you can call that duress and stress, but I mean your lawyer was telling you, saying something to you, that you should've been seeing yourself as far as --

MR. FONTENOT:

Well, but that's --

THE COURT:

--listening to that tape, listening to that audio. I mean he was telling you how it looked. He was telling you how it looked I mean to the jurors. I mean he was reading their faces, he was telling you that. If that's what he was telling you I mean, you know -- anyway, the bottom line is I'm going to finish my ruling on this, but, look, there is a -- there was no indication that -- anyway, we never got to instructing the jury phase of this and so we don't know, you know, whether there would've been a unanimous verdict or not in this case to where that would've been an issue because we didn't get to the trial because we didn't get to finish the trial because there was a guilty plea.

So, anyway. So, I don't see that there's any valid grounds. You know, to say there was pressure from his lawyer, you know, based on advice, candid advice, he was getting, you know -- anyway, I just don't see any valid grounds in this motion. So, I'm going to deny the Motion to Reconsider the Motion to Withdraw the Guilty Plea.

Applying the law to the facts of this case, we find that the trial court did not abuse its discretion by denying Defendant's motion to withdraw his guilty pleas. First, the transcript of the January 10, 2020 hearing indicates that Defendant chose not to be represented by counsel due to his complaint of ineffective assistance of trial counsel, which was one of his reasons for his motion to withdraw. His trial counsel was actually present at that hearing. Regardless, Defendant was given a second hearing on his motion to withdraw during the hearing on his motion to reconsider, where he was represented by his newly-appointed counsel. Second, a review of the plea transcript indicates that Defendant freely and voluntarily pled guilty after being fully advised of his rights. He stated before the trial court that he was not coerced or under duress when he pled, and he admitted that he read and signed the plea agreement form which also included a complete statement of rights.

17

All in all, Defendant has failed to show that there was an infringement on his constitutional rights. Rather, he sought to withdraw his guilty pleas after he realized the penalties he would be facing. The trial court fully considered the totality of the circumstances surrounding Defendant's pleas and found that they were entered voluntarily and intelligently and were not the product of duress or coercion. Given all of the evidence and argument presented, the trial court simply found Defendant's claims of duress and coercion not credible. As such, the trial court did not abuse its discretion. Accordingly, this assignment of error is dismissed as being without merit.

## *Motion to Recuse*

In his first counsel-filed assignment of error and second pro se assignment of error, Defendant argues that the trial court erred in denying his motion to recuse and his motion to reconsider the motion to recuse. Specifically, he asserts that the trial court's ruling on the motion to recuse was procedurally flawed and an abuse of discretion, as the trial judge neither self-recused nor referred the motion for a hearing and ruling before another judge, even though the motion set forth a ground for recusal. As both assignments of errors relate to the motion to recuse, we will consider them simultaneously.

We must first determine whether Defendant can seek appellate review of the motion recuse and the failure to grant the motion to reconsider the motion.

> The general rule is that a plea of guilty or *nolo contendere*, voluntarily and understandingly made, constitutes a waiver of nonjurisdictional defects and defenses, including claims of violation of constitutional rights prior to the plea. A defendant normally waives any nonjurisdictional error by his plea of guilty or *nolo contendere*. "Under both state and federal jurisprudence, an unqualified plea of guilty waives all nonjurisdictional defects occurring prior thereto, and precludes review thereof either by appeal or by post-conviction remedy." *State v. Crosby*, 338 So.2d 584, 588 (La.1976).

*State v. Maffett*, 47,430, pp. 1–2 (La.App. 2 Cir. 9/26/12), 105 So.3d 138, 144 (Brown, Chief Judge, concurring), *writ denied*, 12-2464 (La. 4/12/13), 111 So.3d 1017.

18

We have already determined that Defendant's guilty pleas were constitutionally valid. Since his convictions resulted from the guilty pleas and since he did not reserve any issues for appeal pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976), we find that he waived his right to complain of all non-jurisdictional defects, including the denial of the motion to recuse the trial judge and the denial of the motion to reconsider the motion to recuse. The alleged error, the failure to recuse or to grant a hearing before another judge under the facts set forth, is not a jurisdictional defect. *State v. Sede*, 08-547 (La.App. 5 Cir. 2/10/09), 8 So.3d 702, *writ denied*, 09-1023 (La. 3/5/10), 28 So.3d 1006. Accordingly, this assignment of error lacks merit.

## *Excessive Sentence*

In his second counsel-filed assignment of error, Defendant asserts that the consecutive upper-range sentences imposed for the crime of indecent behavior with a juvenile and the consecutive mid-range sentences imposed for the aggravated crime against nature are unconstitutionally excessive as they are nothing more than cruel and unusual punishment.

As a preliminary matter, we note that Defendant is not precluded from seeking a review of the sentences imposed because of his tendered guilty pleas. Louisiana Code of Criminal Procedure Article 881.2(A)(2) states: "[a] defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." However, this court has consistently held that it is "not automatically precluded from reviewing a sentence unless the plea agreement provides a specific sentence or sentencing cap." *State v. Curtis*, 04-111, p. 2 (La.App. 3 Cir. 8/4/04), 880 So.2d 112, 114, *writ denied*, 04-2277 (La. 1/28/05), 893 So.2d 71. The plea agreement in this case did not state specific sentences or sentencing caps, and Defendant did not explicitly waive the

19

right to appeal his sentences in the plea agreement. As such, Defendant is not precluded from seeking review of his sentences, and we consider his arguments here.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:
>
>> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best

position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Louisiana Revised Statutes 14:81(H)(2) provides an enhanced penalty for the offense of indecent behavior of a juvenile where the victim is under the age of thirteen years and the offender is seventeen years of age or older. It provides that the offender shall be imprisoned at hard labor for not less than two nor more than twenty-five years, with at least two years to be served without the benefit of probation, parole, or suspension of sentence.

Additionally, pursuant to La.R.S. 14:89.1(C)(2), the enhanced penalty for the offense of aggravated crime against nature, with a victim under the age of thirteen years and the offender seventeen years of age or older, is imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years, with at least twenty-five years to be served without the benefit of probation, parole, or suspension of sentence.

Prior to the trial court imposing Defendant's sentences, the State and the defense presented impact statements. The victims testified to the pain, disgust, and trauma caused by Defendant's actions and the lifelong suffering they would have to endure as a result. Defendant's mother and aunt testified to his character, stating that Defendant was "a big teddy bear" and that he loved his children. Then, Defendant apologized to his victims and the mothers of his victims.

Afterwards, the trial court stated the following:

But in any event, you know, as I look at this whole situation and I'm seeing just how -- you know, how -- you know, when I look at the aggravating and mitigating factors in 894, Article 894.1 of the Code of Criminal Procedure, I mean I would say that, you know, I guess you could say that -- I'm sorry, let me get to that. I'm looking for some mitigating -- I mean the only thing that I could possibly see that could

21

be considered a mitigating factor would be what you had mentioned, which it says the defendant has no history of prior delinquency or criminal activity or has led a law abiding life for a substantial period of time before the commission of the incident crime, but I really don't even see that really as a mitigating factor because even though he doesn't have convictions, I mean apparently he's been molesting children for a long time. He just hadn't been caught. So, I mean other than that I don't -- so, I don't even really consider that a mitigating factor and he's been using drugs for a long time. I mean he's admitted that he's been using meth and other things for a long time. So, I mean he hasn't been living a law abiding life. So, I mean he doesn't have convictions, but he hasn't been living a law abiding life. So, I don't even consider that a mitigating factor and that's the only possible mitigating factor that's here. This other list is not applicable, but there are many other aggravating factors here.

I mean number four, the offender used his or her position or status to facilitate the commission of the offense.

Number 11, the offense involved multiple victims or [incidents] for which separate sentences have not been imposed. Well, I don't know. That may or may not -- anyway, I've examined just all these and without listing all of them I just think that just the crime itself caused, and you heard from the victims themselves, how this is going to cause them I mean, you know, [N.F.] said I'm afraid of every man I see. That's what you did to your child. I'm afraid of every man I see.

. . . .

And she's praying for you to you to be able to forgive yourself one day and, you know, so you want to say that these -- you want to -- I mean these children are sitting here listening to you and you basically -- you're trying to walk this tightrope between saying that -- you're not wanting to call them liars and you're trying to blame it all on their mother, but the only -- but you are saying these children -- I mean these children aren't toddlers. These children are old enough to speak for themselves. I mean, you know -- and so they came up here and just poured their hearts out a few minutes ago.

Anyway, but look, at this time on the charges of -- anyway, just because of the severe nature of these charges, the devastating impact that its [sic] had on the victims of this crime, the way that you have continued -- you manipulated these children, you manipulated everybody in this process in order to continue to perpetrate these crimes against your own children and against the -- it would have been [K.S.], right, and all the lives that have been affected by what you've done, and you heard just the raw emotion and the way it has impacted everybody just because of the harm that you've done to everyone and the danger that you have just because of the way [you] just have refused to accept any responsibility or acknowledge any wrongdoing in this whole process. If you were to ever get out of prison you -- there's no doubt in

22

my mind that with the way you think, the way you manipulate people, the way you refuse to see reality that you would do this again. There's no doubt in my mind. I'm going to impose the following sentences.

The trial court went on to sentence Defendant to serve twenty years at hard labor, without the benefit of probation, parole, or suspension of sentence, on each count of indecent behavior with a juvenile. It further sentenced Defendant to serve fifty years at hard labor, without the benefit of probation, parole, or suspension of sentence, for each count of aggravated crime against nature. The trial court ordered the sentences to be served consecutively, which equated to a 140-year total sentence for all of the crimes.

To support his excessiveness claim, Defendant notes that he was a first felony offender. He argues that the trial court focused more on the aggravating factors rather than the mitigating factors, such as the psycho-sexual evaluation that stated he was not attracted to children, his history of drug abuse, and the fact that he was molested as a child. Defendant also contends that it was improper for the trial court to consider the other alleged offenses, as he did not have any pending charges or convictions. Moreover, he argues that it was improper for the trial court to require him to serve consecutive rather than concurrent sentences since the convictions arose out of the same course of conduct.

In opposition, the State asserts that Defendant's sentences are not unconstitutionally excessive as the trial court considered both mitigating and aggravating factors before imposing the sentences. It also asserts that it was not improper for the trial court to consider the other offenses committed by Defendant against the victims in different jurisdictions as his conduct was at issue. Moreover, the State contends that Defendant's argument against the trial court's imposition of consecutive sentences is without merit. According to the State, Defendant's actions did not stem from a single incident or course of conduct but from separate,

23

independent incidents that occurred over the course of months. Likewise, the State argues that concurrent sentences are not mandatory. Lastly, it contends that the trial court considered Defendant's lack of criminal history; however, the trial court weighed heavily on how Defendant used his position of power to facilitate the commission of these offenses on his two daughters and the daughter of his ex-girlfriend.

In *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writs denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *and writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three-factor test from *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, for determining whether a sentence is excessive. That test requires this court to examine "the nature of the crime," "the nature and background of the offender," and "the sentences imposed for similar crimes[.]" *Id.* at 89.

As to the nature of the crimes, indecent behavior with a juvenile and aggravated crime against nature are particularly heinous offenses, involving potentially serious and long-term emotional and psychological issues for the victims. Here, two of the victims were Defendant's own biological daughters, and one was the child of his then girlfriend, all of whom testified regarding the trauma inflicted on them and the consequences they have suffered as a result of these crimes. The trial court adequately considered this in imposing the sentences, as do we.

Next, consideration is given to the nature and background of the offender. As the trial court noted, Defendant, although he has no prior record, has experienced drug addiction in the past. While he expressed remorse at sentencing, and his mother and aunt testified that he loved his children, he, nevertheless, repeatedly sexually abused his two daughters. The trial court noted other victims as well, and the very

24

extent of the multiple charges here, involving three different children, speaks volumes as to Defendant's propensity for sexually harming children. While Defendant points to a profile report in the pre-sentence investigation package that states that he is not a pedophile, the very extent of the convictions here shows otherwise. We agree with the trial court that the extensive aggravating factors present here outweigh any mitigating factors.

We next consider sentences imposed in other cases for convictions involving consecutive sentences for sex crimes against minors. We first note that the general rule regarding concurrent and consecutive sentences is set forth in La.Code Crim.P. art. 883, which provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

Additionally, the Louisiana Supreme Court has repeatedly admonished "that sentence review under the Louisiana [C]onstitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case." *State v. Savoy*, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283. All of the sentences imposed herein are within the statutory limits.

In *State v. Gaines*, 54,383 (La.App. 2 Cir. 2/22/23), 358 So.3d 194, *writ denied*, 23-363 (La. 6/21/23), 362 So.3d 428, the second circuit considered an excessiveness claim concerning a total sentence of 170 years for multiple charges,

25

including at least two counts of molestation of a juvenile involving three juvenile victims, as is the case here.[4] In affirming the sentences, the court stated:

> Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently even if the conduct involved a single victim. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. *State v. Davis*, 52,453 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1194; *State v. Williams*, 52,052 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1200.

> When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are: (1) the defendant's criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; and (6) the potential for the defendant's rehabilitation. The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Sandifer, supra. See also State v. Williams, supra.*

> As to the second prong of the excessive-sentence test, the sentence of 50 years at hard without benefits for both counts of molestation of a juvenile is not constitutionally excessive. The State points out that the sentencing range for each count of molestation of a juvenile is 25 to 99 years at hard labor without benefits. The defendant received a midrange sentence of 50 years for each count of molestation of a juvenile rather than the maximum sentence of 99 years for each count, and the total sentence of 170 years at hard labor for victims M.H., C.E., and A.B. [is] not constitutionally excessive. The sentences are not out of proportion to the seriousness of the offenses and do not purposely and needlessly inflict pain and suffering.

*Id.* at 202.

---

[4] We note that the sentence imposed for molestation of a juvenile, when the victim is under the age of thirteen, is imprisonment "at hard labor for not less than twenty-five years nor more than ninety-nine years." La.R.S. 14:81.2(D)(1). This is the same penalty for aggravated crime against nature when the victim is under the age of thirteen and the offender is over the age of seventeen. La.R.S. 14:89.1(C)(2).

We find that the consecutive sentences imposed here are not constitutionally excessive. Three separate victims, two of which were Defendant's own daughters, were sexually abused for his own perverted pleasure, without regard to the long-term emotional effects these acts would have on them. Defendant could only attempt an explanation of his behavior to his ex-girlfriend by saying that he was sick or that it was because of his drug abuse. He then incredulously told her that his sons were not in jeopardy from his deviant behavior because that was different, that he was not homosexual. Under these circumstances, we find that the sentences running consecutively do not shock the conscience.

Considering the foregoing, we find that the two 50-year consecutive sentences imposed for aggravated crime against nature and the two 20-year consecutive sentences imposed for indecent behavior with a juvenile under the age of thirteen are not unconstitutionally excessive. Accordingly, this assignment of error is dismissed as being without merit.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note that the sentences imposed for both counts of aggravated crime against nature are illegally lenient. Louisiana Revised Statutes 14:89.1(D)(1) requires that the trial court, "after determining the financial resources and future ability of the offender to pay, require the offender, if able, to pay the victim's reasonable costs of counseling that result from the offense." The trial court failed to make this determination at the sentencing proceeding; thus, the sentences are illegally lenient. *See State v. P.T., Sr.*, 07-665, (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, *writ denied*, 08-26 (La. 5/30/08), 983 So.2d 895. Although the authority to correct an illegally lenient sentence is granted and discretionary under La.Code Crim.P. art. 882, no action is taken here as the issue

27

has not been raised as an error.[5] In *State v. Brown*, 19-771 (La. 10/14/20), 302 So.3d 1109, the supreme court held that the court of appeal erred in vacating an illegally lenient sentence absent any complaint by the State. Accordingly, we will not address the illegally lenient sentence imposed on both counts of aggravated crime against nature.

## DECREE

Defendant's convictions and sentences are affirmed.

**AFFIRMED.**

---

[5] This court has noted in several opinions that the trial court imposed an illegally lenient sentence, but it stated it would not recognize/correct the error because the issue was not raised. *State v. Monceaux*, 22-28 (La.App. 3 Cir. 6/1/22), 340 So.3d 201; *State v. Mayfield*, 18-420 (La.App. 3 Cir. 12/6/18), 261 So.3d 101, *writ denied*, 19-46 (La. 5/28/19), 273 So.3d 316; *State v. Aguillard*, 17-798 (La.App. 3 Cir. 4/11/18), 242 So.3d 765, *writ denied*, 18-1207 (La. 3/6/19), 266 So.3d 897; *State v. Goodeaux*, 17-441 (La.App. 3 Cir. 11/2/17), 231 So.3d 124, *writ denied*, 17-2143 (La. 9/14/18), 252 So.3d 488; and *State v. Celestine*, 11-1403 (La.App. 3 Cir. 5/30/12), 91 So.3d 573.

28